FIRST NATIONAL BANK OF GREEN BAY *vs.* JOHN B. DEAR-
BORN.   *

Suffolk.   March 4, 1873. — June 18, 1874.   COLT, ENDICOTT & DEVENS,
JJ., absent.

The delivery by an owner of goods of a common carrier's receipt for them, not nego-
tiable in its nature, as security for an advance of money, with the intention to
transfer the property in the goods, is a symbolical delivery of them, and vests
in the person making the advance a special property in the goods sufficient to
maintain replevin against an officer who afterwards attaches them upon a writ
against the general owner.

REPLEVIN of one hundred barrels of flour.   At the trial in the
Superior Court, *Dewey*, J., with the consent of the parties, with-
drew the case from the jury, and reported it to this court in sub-
stance as follows :

At the trial the following facts appeared : R. G. Parks, residing
and doing business in Green Bay, Wisconsin, under the name of
R. G. Parks & Co., was engaged in the manufacture of flour at a
mill in Neenah, in the State of Wisconsin, about thirty or forty
miles from Green Bay.   The plaintiff bank had its place of busi-
ness at said Green Bay.   Prior to the transactions, in regard to
the flour in question, Parks had forwarded flour to Harvey Scud-
der & Co., at Boston, and drawn drafts upon them, only a part
of which had been accepted and paid.   On October 17, 1870,
Parks applied to the plaintiff in Green Bay to advance $400 upon

the one hundred barrels in controversy, which the plaintiff agreed to do. Parks then left with the plaintiff the following draft, addressed to Harvey Scudder & Co. of Boston : " $400. Office of R. G. Parks & Co., Green Bay, Wisconsin, October 17, 1870. At sight, pay to the order of M. D. Peak, cash, four hundred dollars, value received, and charge the same to account of R. G. Parks & Co." Written in pencil across the face of the draft were these words : " Hold this till to-morrow when I will give you B. L."

On the following day Parks delivered to the plaintiff the following written instrument : " Chicago & Northwestern Railway Company, Neenah, October 17, 1870. Received from R. G. Parks & Co. one hundred barrels of flour, branded W. — Rec. in rain. Consigned to Harvey Scudder & Co., Boston, Mass., via Green Bay. To be forwarded to Ft. Howard Station, upon the terms and conditions of the published tariff of this company. A. H. Boardman, Agent." The plaintiff thereupon placed to the credit of Parks on their books the sum of $400.

It was admitted by the defendant that Parks delivered the draft and the railroad receipt to the plaintiff for the purpose of securing the advance of $400 on the flour ; and that it was the understanding that by that transaction the property was transferred to the plaintiff as security for its advance.

The flour, which in fact was at the time of the above transaction the property of Parks, and was at his mill in Neenah until it was delivered to the railroad company, and had not been seen by the plaintiff or Parks, had been delivered to the agent of the railroad company by the agent of Parks, on October 17, prior to the signing of the railroad receipt.

The plaintiff forwarded the receipt and draft to Boston, where the former was presented to Harvey Scudder & Co., who declined to accept it, giving as a reason therefor that they had not received the bill of lading ; and they never in fact made any advance or payment on account of the flour, or received or offered to receive the flour. Shortly before the flour arrived at Boston, one of the firm of Harvey Scudder & Co. informed a member of the firm of Scudder, Bartlett & Co., who were creditors of Parks, that the flour was likely to arrive, and that Harvey Scudder & Co. had no claim upon it ; and upon its arrival at the depot in Boston, about November 7, 1870, the defendant, a deputy sheriff

attached it as the property of Parks & Co., on a writ in favor of Scudder, Bartlett & Co., and the defendant held it under said attachment at the time of service of this writ.

If upon these facts the plaintiff is entitled to maintain the action, judgment is to be entered for the plaintiff, with nominal damages, otherwise for the defendant.

*R. M. Morse, Jr. & R. Stone, Jr.*, for the plaintiff.

*J. W. Hubbard*, for the defendant, contended, 1. that the transfer to the plaintiff was void as against the creditors of Parks under the law of Wisconsin, and cited Rev. Sts. Wisc. *c.* 107, § 5 ; *Whitney* v. *Brunette*, 3 Wisc. 621 ; *Menzies* v. *Dodd*, 19 Ib. 343 ; *Mayer* v. *Webster*, 18 Ib. 393 ; *Place* v. *Langworthy*, 13 Ib. 629 : 2. That after the delivery to the railroad for Scudder & Co., Parks had no power to deliver the flour to the plaintiff.

AMES, J. It appears that when the draft was discounted and the receipt delivered to the plaintiff, both parties understood that it was an advance by the bank, " on the flour." Both parties intended that the property should be, and understood that it was, by that transaction, transferred to the bank, as security for that advance. The discounting of the draft was a sufficient consideration for such a conveyance. If there was a sufficient delivery of the property to the plaintiff, there was nothing to hinder the intention of the parties from going into full effect.

The character and situation of the property at the time of this transaction were such that an actual delivery was impossible. A constructive or symbolical delivery was all that the circumstances allowed, but a delivery of that nature, if properly made, would have been sufficient to give to the plaintiff corporation the title to the property, and an immediate right of possession, which it could maintain, not only against Parks himself, but also against his creditors. *Tuxworth* v. *Moore*, 9 Pick. 347. *Fettyplace* v. *Dutch*, 13 Pick. 388. *Whipple* v. *Thayer*, 16 Pick. 25. *Carter* v. *Willard*, 19 Pick. 1. The delivery of the evidences of title, with orders indorsed upon them, would be equivalent to the delivery of the property itself. *Gibson* v. *Stevens*, 8 How. 384. *Nathan* v. *Giles*, 5 Taunt. 558. *National Bank of Cairo* v. *Crocker*, 111 Mass. 163, and cases there cited. All that would be necessary in such a case would be that the thing actually delivered should have been intended as a symbol of the property sold.

In this case, the only thing which was delivered to the plain-tiff, as the representative or symbol of the property intended to be transferred to the plaintiff, was the written acknowledgment of the railroad corporation that they had received the merchandise for transportation, consigned to Harvey Scudder & Co., of Boston. No order of any kind was indorsed upon this receipt, and no attempt was made to transfer it to the plaintiff in any mode, other than by mere manual delivery. But the receipt was evidence of ownership in Parks, and the only voucher which he had in order to show his right to the goods after parting with their actual possession. It was the means which he had of calling the carrier to account if the goods should be lost or injured, and it might well be supposed that the carrier would not ordinarily give up the goods except upon the production and surrender of that receipt. Whatever right Scudder & Co. might have had to take the flour into their own hands if they had accepted the draft, it is certain that on their refusal to receive the consignment, the property remained in the hands of the carrier, as the property of the consignor, or any person deriving title from the consignor; the carrier would not be wholly relieved of responsibility by the refusal of Scudder & Co. to receive the property, but would continue to be liable, at least for reasonable care in its custody, to the true owner.

It is true that a receipt of this kind does not purport on its face to have the *quasi* negotiable character which is sometimes said to belong to bills of lading in the ordinary form ; neither does it purport in terms to be good to the bearer. But independently of any indorsement, or formal transfer in writing, the possession and production of it would be evidence indicating to the carrier that the bank was entitled to demand the property, and that he would be justified in delivering it to them. There are cases in which the delivery of a receipt of this nature, though not indorsed or formally transferred, yet intended as a transfer, has been held to be a good symbolical delivery of the property described in it. In *Haille* v. *Smith*, 1 B. & P. 563, Eyre, C. J., uses this language : " I see no reason why we should not expound the doctrine of transfer very largely, upon the agreement of the parties, and upon their intent, to carry the substance of that agreement into execution." In *Allen* v. *Williams*, 12 Pick. 297, 301

Shaw, C. J., in delivering the judgment of the court, says: " Even a sale or pledge of the property without a formal bill of lading, by the shipper, would operate as a good assignment of the property; and the delivery of an informal or unindorsed bill of lading, or other documentary evidence of the shipper's property, would be a good symbolical delivery, so as to vest the property in the plaintiffs." It is true that he adds that it was not necessary to place the case upon that ground. But this dictum was cited with entire approbation, in a case raising that exact point, in the Court of Appeals of the State of New York. *Bank of Rochester* v. *Jones*, 4 Comst. 497. In that case, as in this, the plaintiff had discounted a draft drawn against a quantity of flour, and its title, as in this case, depended upon a carrier's receipt, de-· livered to it without any written indorsement. The court held that the plaintiff thereby acquired a sufficient title to the property, and could call the consignee to account for it, he having converted the property to his own use, without accepting the draft. It is not necessary to hold that the plaintiff was absolute owner of the property; it is enough that it had a right of property and of possession to secure the payment of the particular draft; and the right of the former owner, Parks, in the specific property, had become divested, leaving him only a right in the surplus money which might remain after a sale of the flour, and a payment of the draft from the proceeds. *De Wolf* v. *Gardner*, 12 Cush. 19, 24.

Some reliance was placed by the defendant's counsel upon certain local statutes and judicial decisions of the State of Wisconsin. But, if applicable at all, they do not in our judgment affect the decision of the case. If we are right in holding that there was a sufficient delivery to pass the property to the plaintiff corporation, the carrier must be considered, after that time, as its bailee, and as holding the property for it, and not in any adverse relation. His possession would be the possession of the plaintiff.

Our conclusion therefore is that the clear intent of the parties, that the property should stand as security to the plaintiff in discounting the draft, was carried into effect in a manner sanctioned by sound authorities, and that there are no special equities in favor of an attaching creditor that make it desirable to defeat that intent.          *Judgment for the plaintiff.*