[No. 12690.   Department One. — June 9, 1890.]

## H. SCAMMON, Appellant, v. WELLS, FARGO AND COMPANY, Respondent.

Common Carrier — Liability Limited to Disclosed Value of Articles Carried. — A common carrier is not liable upon any package carried for more than the value of the articles as named in the receipt or bill of lading. He has a right in all cases to be truly informed as to the value of the property, in order to estimate the risk, and determine the care which should be exercised in the protection of the property, and to save himself from loss.

Id. — Trover for Goods Stolen from Carrier. — A carrier is not liable in trover for property, of which he has been robbed, beyond the value specified in his receipt, in the absence of charge of fraud, malice, oppression, or collusion with the robber, or of willfully mingling the property after rescue with other property of the same kind, so that it cannot be identified or segregated.

Id. — Settlement with Consignee. — A carrier has the right to assume that the consignee is the owner of goods consigned, and to settle with him therefor, if he has been robbed thereof, in the absence of notice that the consignor was the owner of the property.

Id. — Agency of Consignee for Consignor — Notice to Principal — Settlement with Agent. — If the consignee is authorized as agent of the consignor to receive money from a carrier as damages for the loss of goods consigned, the consignor, as principal, is charged with notice of what the agent has done, and is bound by a settlement and abandonment of further claim made by the agent.

Id. — Rights of Owner of Goods Stolen from Carrier. — The owner of goods stolen from a carrier may either demand the value of the property which was lost, or wait until the property is recovered, and then demand possession of the property itself.

Id. — Recovery of Stolen Articles by Carrier after Settlement of Damages — Passing Title. — If the value of articles stolen from a carrier has been paid to and accepted by the owner or his agent in the amount specified in the receipt, without suit being brought therefor, such acceptance passes title of the goods to the carrier, regardless of their actual value, as fully as if a judgment for their value had been recovered and paid; and if the property is subsequently recovered by the carrier, the former owner cannot set aside the settlement and reclaim the property.

Appeal from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*J. F. Cowdery*, for Appellant.

*Pillsbury & Blanding*, for Respondent.

PATERSON, J. — On April 12, 1875, plaintiff delivered to defendant at Downieville two sealed packages of gold-dust, of the value of $3,758.93, but which he represented to be of the value of $3,260, to be transported by defendant's express to plaintiff's agent, the London and San Francisco Bank, Limited, at San Francisco. The packages were placed by defendant with other packages of gold-dust, valued at about two thousand dollars, in the express-box. On April 13, 1875, the stage-coach in which the gold was being transported from Downieville was stopped by a highwayman, and robbed of all its treasure. On April 21st, the bank (plaintiff's agent) demanded the packages, or their value. Defendant thereupon, and without knowing that the bank was not the owner of the property, paid to it the sum of $3,260, and took a receipt from it, in which the two packages were specified as being a sealed bag valued at $160, and a sealed package valued at $3,100, "taken by robbers at Oregon Hill, April 14, 1875." At the time this payment was made the defendant had no knowledge that the bank was not the owner of the packages, and did not know by whom the robbery was committed, or where the property was concealed. Through the efforts of the company's chief detective, J. B. Hume, the robber was arrested and the gold-dust recovered on May 4, 1875. When recovered, plaintiff's gold-dust was mingled with other gold-dust, the property of other persons, taken by the robber, and could not be identified. On May 4th, plaintiff, having learned of the recovery of the gold, called upon defendant, and offered to return the $3,260 received from it, and demanded the packages shipped by him, stating that the dust was worth more than the value placed upon it when shipped. The agent of defendant stated

to plaintiff that the defendant had expended a large amount of money in recovering the property, and asked him if he was willing to stand any part of the expense. Defendant declined to do so, and has never paid, or offered to pay, any part of the expense incurred in the recovery of the gold-dust. The regular rate of the defendant for carrying gold-dust was five dollars for each one thousand dollars' worth, but, in consideration of plaintiff's agreement to ship all his gold-dust by defendant's express, defendant was charging plaintiff only four dollars per thousand. The packages were sealed, and of course defendant knew nothing of the true value thereof, except from what the plaintiff told it. The court found that if defendant had known at the time it received the shipments that the property was of greater value than $3,260, it would have charged and collected $4 for each $1,000 worth of dust. Nothing has ever been paid or offered to defendant for transporting the excess of gold-dust above the value of $3,260.

Plaintiff brought this action to recover from defendant the sum of $498.93. The court gave judgment for the defendant, and from said judgment, and from an order denying his motion for a new trial, plaintiff has appealed.

We think the judgment is right, and should be affirmed.

The Civil Code provides that "a common carrier of gold, silver, platina, or precious stones, or of imitations thereof, in a manufactured or unmanufactured state, . . . . is not liable for more than fifty dollars upon the loss or injury of any one package of such articles, unless he has notice, upon his receipt thereof, by mark upon the package, or otherwise, of the nature of the freight; nor is such carrier liable upon any package carried for more than the value of the articles *named in the receipt* or the bill of lading." (Sec. 2200.) This measure of damages was adopted for the protection of the carrier, and does no

injustice to the owner. The carrier is an insurer of the property intrusted to him, and is legally responsible for acts against which he cannot provide, from whatever cause they may arise, only the acts of God and of the public enemy, and those which arise out of the fault of the owner, being excepted. He therefore has a right in all cases to be truly informed as to the value of the property, in order to estimate the risk, and determine the care which should be exercised in the protection of the property, and to save himself from loss. (Lawson on Contracts of Carriers, sec. 20; 3 Sutherland on Damages, 243.)

This action being for damages for the wrongful conversion of the property, the rule given in section 2200, *supra,* cuts off the right of the plaintiff to recover, there being no charge of fraud, malice, or oppression on the part of the defendant. If the carrier should collude with the robber, or, after rescuing the property, should willfully mingle it with other property of the same kind so that it could not be identified and segregated, the measure of damages might be different, but nothing of that kind is claimed here.

There are other reasons why the plaintiff is not entitled to recover. The defendant did not know that plaintiff was the owner of the property, and the consignment being an unqualified one, it had the right to assume that the consignee was the owner, and to settle the matter with the bank. (*R. & M. R. R. Co.* v. *W. M. Co.,* 76 Me. 260; 2 Rorer on Railways, 1330, 1331; Hutchinson on Carriers, sec. 720.) If the bank be treated as the agent of plaintiff, — and it is alleged in the complaint that it was, — the same conclusion is reached. If the bank was authorized as agent of plaintiff to receive money in payment of the damages, it was authorized to receipt therefor, and the plaintiff was charged with notice of what its agent had done. (Civ. Code, sec. 2322.) The $3,260 was paid to the bank on April 21st. Not

until after plaintiff learned that the gold-dust had been recovered, viz., on May 4th, was any objection made to the settlement made by the agent. That it was a settlement and abandonment, so far as the agent had authority to make it, there can be no doubt. The agreed statement states that the bank "demanded of defendant the said packages, *or their value,* and defendant then and there, upon such demand, paid," etc.

Plaintiff had the right to demand the value of the property which was lost, or to wait until the property was recovered and then demand the possession of the property itself. He chose through his agent to accept $3,260, the value which has been placed upon the property by plaintiff. Thereafter, defendant, proceeding upon the assumption that by the payment of the loss it had become the owner of the property, expended the sum of $1,635 in recovering the property which had been stolen, and of which plaintiff's gold-dust was the greater part. It would be manifestly unfair to allow the owner to abandon the property under such circumstances, accept a certain sum in payment of the loss, lie by until a large sum of money had been expended in recovering the property (larger than the amount of loss sustained by the owner in the settlement), and then to set aside the settlement and require the carrier to pay the full value of the property. If plaintiff had sued defendant and recovered judgment before the property was restored to defendant, and defendant had paid the judgment, the title to the property would have vested in defendant regardless of its actual value. (*Smith* v. *Smith*, 51 N. H. 571; Cooley on Torts, 458.) The acceptance without suit of the amount offered in payment of damages had precisely the same effect, and passed the title to defendant.

Judgment and order affirmed.

Fox, J., and BEATTY, C. J., concurred.