(Decided April 1st, 1898).

---

# DAVID M. ANDREW AND LEWIS GOLDMAN *vs.* MARTIN MEYERDIRCK AND WILLIAM F. SHINNICK.

*Construction of Building Contract—Option to Purchase Ground Rents—Agreement Not to Assign Without Consent of Lessor.*

Defendant, the owner of a tract of land, leased the same in lots to a builder, subject to certain ground rents. A contract between the parties provided that the lessee should erect a house on each of the lots, the defendant agreeing to make bonus advances to the builder during the progress of the work, and it was stipulated that the

builder should have the right at any time within one year to pur-
chase the ground rents at a certain valuation. The builder coven-
anted that he would not assign or sublet the leasehold interest in the
houses or in the contract to any person until after the completion of
the houses, except with the written consent of the defendant. Plain-
tiff contracted to furnish certain materials for the houses and the
builder agreed that as additional security for payment plaintiff should
have all the sums obtained for the ground rents over and above the
prices named in the agreement between the builder and defendant.
Plaintiff afterwards assigned to another party his rights in certain of
the ground rents. Defendant refused to assent to either of these
assignments. Upon a bill by the assignee for specific performance
of the contract to sell the ground rents at the prices named, *Held*,

1. That the agreement between the builder and plaintiff did not
amount to an assignment of the option to buy the rents and con-
ferred no right as against the defendant, but only gave the plaintiff
the right to claim from the builder the profit made by him in case he
had exercised the option,

2. That even if said agreement were an assignment of the option then
under the terms of the contract between defendant and the builder
the latter had no right to assign his option to purchase the ground
rents without the consent of the defendant, and that defendant had
not given his consent to the assignment to the plaintiff nor acted
in such a way as to be estopped from setting up such defence.

Appeal from a decree of the Circuit Court of Baltimore
City (DENNIS, J.), dismissing the bill of complaint.

The cause was argued before McSHERRY, C. J., Fow-
LER, BRISCOE, PAGE, BOYD and PEARCE, JJ. (March 15,
1898).

*Richard B. Tippett* and *James E. Tippett* (with whom
were *Wm. Sherman Bansemer* and *C. Charles Friedel* on
the brief), for the appellants.

*Wm. S. Bryan, Jr.*, and *A. de R. Sappington* (with whom
was *Albert W. Rivers* on the brief), for the appellees.

BOYD, J., delivered the opinion of the Court.

Martin Meyerdirck, on the 18th day of January, 1896,
purchased from Milton Goldman, for the sum of fifteen
thousand dollars, three hundred and ninety-six feet of

ground fronting on North avenue, in the city of Baltimore, and running from the centre line of Pulaski street to the centre line of Smallwood street. On the same day he leased to William F. Shinnick, a builder, for the term of ninety-nine years, renewable forever, twenty-two lots of ground, which embraced all that he had purchased, excepting sixty-six feet included within the lines of Pulaski and Smallwood streets, and reserved an annual ground rent of $96.00 on one lot, $87.00 on each of two of them, and $90.00 on each of the others. On that day an unrecorded agreement was also entered into between Meyerdirck and Shinnick, in which it is recited that the lease was made on condition that Shinnick erect on each of the twenty-two lots a house of the size, character, etc., therein accurately described, and, in consideration thereof, Meyerdirck agreed to pay him the sum of twelve thousand dollars towards their erection and completion. It is what is known in the city of Baltimore as a "bonus building contract," which is a plan adopted by real estate owners to induce builders to erect buildings on lots leased by the former, the amount of the bonus being added to the estimated value of the ground and the ground rent being accordingly increased to secure returns on the investment. In this case the bonus was to be paid in seven different payments on each house as it progressed—the first being payable when the first floor joists were laid and the last when the house and pavement were finished. The contract was carefully drawn, looking to the protection of the respective parties, and amongst other provisions Meyerdirck agreed that for the space of twelve months from date he would sell to Shinnick the annual rent of $96 for fifteen hundred and fifty dollars, each of the two annual rents of $87 for fourteen hundred dollars, and each of the remaining rents for fourteen hundred and thirty dollars. The aggregate of those sums is $31,520, the difference between that amount and the bonus added to the purchase money for the whole ground being, it is stated, the profit Meyerdirck expected to make out of the

transaction.   It can readily be seen that there is some risk on the part of the owner of the ground if the lessee is not financially responsible, as he may leave, voluntarily or otherwise, the buildings in an unfinished condition after part of the bonus has been paid, he may meet with some unexpected difficulties in the course of erection of the houses, or some disaster may happen that will require the lessor to make a larger investment in the property than he was prepared for, and may eventually lose part of his investment. Evidently with a view of protecting Meyerdirck against such or other misfortunes, Shinnick, who seems to have had his confidence, covenanted that he would "neither assign nor sublet the leasehold interest in said twenty-two houses, or in this contract to any person or persons until after said twenty-two houses have been completed, except by and with the written consent of said Meyerdirck, and any such assignment or subletting without such written authority shall be null and void and all rights and interests that the said Shinnick may have under this contract or said lease hereinbefore mentioned shall be forfeited to said Meyerdirck as aforesaid." The work was promptly commenced according to the contract, and on the 27th day of March, 1896, Shinnick and David M. Andrew made an agreement in which, after referring to the lease and quoting the provision in the agreement of January 18th, 1896, which gave Shinnick the right to purchase the ground rents at the prices therein named within twelve months, and stating that Andrew had agreed to furnish all the stone work for the twenty-two houses, Shinnick agreed " as additional security for the payment of the work furnished by the said Andrew that he, the said Andrew, may have and it is now agreed that he shall have all and every the sums of money obtained for the said rents over and above the prices named therefor in the agreement between Meyerdirck and Shinnick to the extent of the amount of the bill for the work so furnished by the said Andrew." On May 20th, 1896, Andrew undertook to assign to Milton Goldman the " equity " held by him in seven of the ground

rents of $90 each. The same day the latter assigned his interest " in above equities " to Lewis Goldman. Meyerdirck refused to consent in writing to the assignments, but the appellants claim they are entitled to them for the reasons which we will hereafter refer to.

The bill of complaint states most of 'the facts we have thus given at some length, and makes other allegations, amongst them that the transaction between Meyerdirck and Shinnick was in reality only a loan from the former to the latter, and that Meyerdirck was only entitled to recover the sum of twenty-seven thousand dollars, with interest thereon. The bill asks the Court to pass a decree declaring that he was only entitled to that sum, with interest, and that the complainants be permitted to bring into Court the redemption price of said rents mentioned in the agreement, and that Meyerdirck be required to execute a good and valid title for the same upon being paid the redemption price, or that a trustee be appointed to sell said rents and pay off what the Court may determine Meyerdirck entitled to, the balance to be paid to the plaintiff and other creditors. There is also a prayer for general relief. The theory of the bill, as originally filed, seems to have been abandoned and although the record does not show it was amended the Judge below stated in his opinion that " it was understood at the hearing that the plaintiff would amend and stand altogether upon the theory of assignment," and the position taken in this Court by the appellants was that they are entitled to a specific performance of the contract, as assignees of Shinnick. We do not understand why the two appellants were joined in one bill, as their rights, if any, to specific performance are separate and distinct, as the one has no interest in the lots claimed by the other, but as in our opinion the case is not made out in favor of either of them it will serve no good purpose to discuss the purely technical objections to the bill.

The agreement of the 27th of March, 1896, between Shinnick and Andrew must of course be the foundation for

the right of the plaintiffs to relief, as Goldman claims through Andrew, and the paper of August 11, 1896, signed by Shinnick cannot aid him, as before then Shinnick had surrendered his interest to Meyerdirck. There is certainly nothing in that agreement which *in terms* assigned to Andrew the right Shinnick had to purchase the ground rents. Nor do we think a fair interpretation of the contract justifies the plaintiffs in making such a claim. The preamble recites that " it is believed that the rents will bring a larger sum than that mentioned in the agreement between Meyerdirck and Shinnick," and, in consideration of the work to be furnished by Andrew, Shinnick agreed that he should have— not the right to purchase the rents at the figures Meyerdirck agreed to sell them for—but "*all and every the sums of money obtained for the said rents over and above the prices named.*" If, for example, Shinnick had exercised his option to purchase within the year the annual rent of $96, for the sum of fifteen hundred and fifty dollars, Meyerdirck's responsibility for that lot would have ended when he conveyed it to Shinnick, as the agreement with Andrew does not attempt to give him the right to purchase the rent. It was only in the event that Shinnick sold it and obtained for it a larger sum than he paid for it. Upon what possible ground, then, even admitting that Shinnick could assign his interest in the contract, could Andrew demand of Meyerdirck a sale to him of that rent for fifteen hundred and fifty dollars? If Shinnick sold it for more, then Andrew was entitled to the difference from Shinnick, *not from Meyerdirck*, and that is all any fair interpretation of the agreement can mean. There was no *absolute* assignment attempted even of that, for it was only " an additional security to the extent of the amount of the bill for the work so furnished by the said Andrew." It is not reasonable to suppose that Shinnick intended to bind himself to sell the ground rents at any price Andrew chose to take. All Andrew was interested in was the amount of his bill, and if that had only been one thousand dollars he might have paid himself by the sale of

the twenty-two ground rents at an advance of $50 each or less, although the contention of the appellants now is that they were worth several thousand dollars more than the sum for which Shinnick could purchase them. We cannot suppose, then, that Shinnick was willing or intended by that agreement to assign to Andrew his right to purchase the ground rents at the prices named in the January agreement, for had he done so he would have put it in the power of Andrew to sell them at such figures as he chose, but we must assume that he only intended to do what the agreement itself says—to pay him all sums of money obtained from the rents over and above the prices named. There is nothing in the agreement from which we can gather an intention on the part of Shinnick to surrender to Andrew such control over the ground rents as he had acquired through his contract from Meyerdirck. Suppose Shinnick had agreed to sell the rent of $96 to A. for eighteen hundred dollars, and had then agreed to give Andrew the sum to be obtained from A. over and above the price named in the agreement, could it be pretended that Andrew would as assignee of Shinnick be thereby entitled to have a decree for specific performance against Meyerdirck? Or suppose Shinnick had within the year exercised his option to purchase from Meyerdirck all of these ground rents for the sums named, is there anything in the agreement between Shinnick and Andrew to prevent Meyerdirck from selling to the former, even if he had notice of such an agreement? Could not Shinnick at any time within the year have exercised his option and required Meyerdirck, by a bill for specific performance if necessary, to convey them to him, notwithstanding his contract with Andrew, if there be no other sufficient ground to defeat such demand? Meyerdirck contracted with Shinnick to do one thing, sell him the rents at the prices named, and Shinnick contracted with Andrew to do a very different thing, give him (Andrew) what he (Shinnick) made out of his bargain with Meyerdirck as to the rents, to the extent that he owed Andrew on

ANDREW vs. MEYERDIRCK.

Opinion of the Court.                    [87

the stone contract. It therefore seems to us clear that the
Court below was right in holding that the agreement of
March, 1896, did not amount to an assignment of Shinnick's
option to Andrew and hence, for that reason, he was not
entitled to maintain a bill for specific performance against
Meyerdirck.

But if that agreement had been couched in such lan-
guage as to leave no doubt in the minds of the Court that
the intention was to assign all Shinnick's interest in the part
of the contract of January 18th that provided for the pur-
chase by him of the ground rents, at the prices therein
named, we are of opinion that it could not have been done,
so as to enable the assignees to proceed against Meyerdirck,
for the reason that the contract was not assignable without
the consent of Meyerdirck. The lease contains many of the
covenants usually in instruments of that character, but has
no provision for the redemption of the ground rents. The
only right therefore to redeem was such as the statute con-
ferred—which provides for redemption after the expiration
of ten years for a sum equal to the capitalization of the rent
reserved, at a rate not to exceed six per centum. The les-
sor therefore had an investment under it which could not
be disturbed for ten years. But by the contract he not only
agreed to pay the bonus of twelve thousand dollars, but
also to sell the ground-rents within the year at the sums
named. Shinnick on his part agreed to build the houses,
as described in detail, within eight months, to insure each
house as soon as it was under roof, and entered into the
covenant not to assign, etc., as stated above. It is ap-
parent that the object of giving Shinnick the privilege of
redeeming the rents was to encourage and help him in his
work and it was an important part of the consideration
moving him to enter into the covenants made by him. It
is also true that if Shinnick built the houses as he contrac-
ted to do and did not exercise the option within the year,
that Meyerdirck had the prospect of getting more than he
would have gotten under the contract. It will not do then

to say that when Shinnick covenanted not to assign his interest in the houses or *in this contract* until the houses were completed, without the written consent of Meyerdirck, that the covenant did not apply to the sale of rents, but only to the other part of the contract.  · It is true that Shinnick could purchase the rents at any time during the year, but Meyerdirck probably knew that his financial condition would not enable him to do so until he had completed the houses, and that it was not probable he could get purchasers for the ground rents before he had finished the houses, as the value of the rents would necessarily be affected by that.   But however that may be it seems clear to us that Meyerdirck only intended to grant the privilege to Shinnick himself and not to his assigns, without his consent in writing, and hence so provided in the contract.   The fact that such privilege was not inserted in the lease is strong evidence of the intention of the parties to confine it to Shinnick.   But whatever their motives were for inserting such a provision, we cannot assume that the prohibition against assignment was intended to apply to one part of the contract and not to the other.   We would be practically making a new contract for the parties.   It is very evident that both Andrew and Goldman thought it was necessary to get Meyerdirck's consent, and were not imposed on by Shinnick in that respect, for both testified that they took their agreements to him to get his consent in writing, but he refused to give it.

A good deal of the testimony in the record is on the question whether Meyerdirck promised verbally to see that the difference between what Shinnick was to pay him and what he sold the rents for were paid to the appellants, it being thus attempted to establish an equitable estoppel.  He flatly denies that, but says he may have stated that if Shinnick would comply with his contract and was satisfied for Andrew to get the " equities " he would not object to it. The dealings between them tend to show that that was all Meyerdirck undertook to do.   Three rents were sold that

Andrew received some benefit from. In the case of one, the check for the difference was payable to Andrew, but he signed the receipt. "Wm. Shinnick per David M. Andrew," and for the other two the checks were made payable to William F. Shinnick. It would be useless to repeat the testimony in this opinion, for taking it all into consideration, after a most careful examination of it, we think it cannot be said that it establishes any such agreement on the part of Meyerdrick as is claimed by the appellants, but on the contrary it falls far short of the certainty and positive proof required in cases where the specific performance of a contract is sought to be enforced, even if it be conceded that this relief could be granted if the appellants had established as a fact a promise on the part of Meyerdirck to pay them the excess over the prices named in the contract realized from the sales of the rent. So without referring to the other defences, set up by the defendant, we are of opinion that the decree of the Court below must be affirmed. We have not thought it necessary to burden this opinion by the citation of authorities, as the principles applicable to proceedings for specific performance have been too often stated by this Court to require a reference to them, and the other questions depend upon the facts and the correct interpretation of the contracts before us.

> *Decree affirmed with costs to the appellees.*

(Decided April 1st, 1898).