[No. 8032.   Department One.   May 27, 1909.]

BONDS-FOSTER LUMBER COMPANY, *Respondent*, v. NORTHERN
PACIFIC RAILWAY COMPANY, *Appellant*.[1]

CARRIERS—OF GOODS—BILL OF LADING—NEGOTIABILITY.  Delivery
by the consignor of a carrier's bill of lading passes no right to the
property, where the bill acknowledged receipt of the property from
the consignor, gave the name of the consignee and destination, and
was stamped in large letters across its face, "not negotiable or as-
signable," and contained no stipulation reserving ownership in the
consignor; as the same is in effect but a receipt for the lumber with
a contract that it shall not be assigned.

SAME—STATUTES—CONSTRUCTION.  Bal. Code, § 3601, providing
that a bill of lading does not alter the rights or obligations of the
carrier as defined in the negotiable instrument law, unless plainly
inconsistent therewith, authorizes the parties to agree upon a bill
of lading that is nonnegotiable; although Bal. Code, § 3598, declares
that all bills of lading are negotiable.

ASSIGNMENTS—RIGHT OF ASSIGNEE.  The assignee of a contract
which expressly declares that it is not negotiable or assignable ac-
quires only a cause of action against the assignor.

Appeal from a judgment of the superior court for Pierce
county, Easterday, J., entered February 16, 1909, upon find-
ings in favor of the plaintiff, after a trial on the merits be-
fore the court without a jury, in an action upon a bill of
lading.  Reversed.

*Geo. T. Reid* and *J. W. Quick*, for appellant.
*Denman & Fishburne*, for respondent.

GOSE, J.—This action was instituted by the respondent,
as plaintiff, against the appellant, a common carrier, for the
recovery of the value of a car load of lumber.  The case
arose out of the following facts:  On November 6, 1907, one
William McDonald shipped a car of lumber to Savage Bros.

[1]Reported in 101 Pac. 877.

at Tacoma, Washington, and received the following bill of lading as evidence of such shipment:

NORTHERN PACIFIC RAILWAY COMPANY.

No. Car. N. P. bx 42390.                    Pac. Division,
                                      McMillan, Wash., 11-6, 1907.
Received from            Wm. McDonald, in apparent good condition.
   Consignee and              Description of Property.    Weight.
   Destination
Savage Bros.                    25057 ft. Fir Lbr.              80000.
   Tacoma,
      Wash.                     M. L. S. L. & E.

               NOT NEGOTIABLE           Loaded to visible
                OR ASSIGNABLE.              capacity.
Received $—— to apply
in prepayment of charges on
property described hereon.                    ⁰
Advances $—— for ————
      .................. Agent.
As described above, contents and value unknown, to be transported
by the Northern Pacific Railway to station ........ ready to be
delivered to the part.. entitled to the same and it is expressly stip-
ulated and agreed that the above property is transported on the con-
ditions endorsed hereon, which form part of this contract, and of
the consideration for carrying the same, and not otherwise.
               NORTHERN PACIFIC RAILWAY,
No. ......                           By C. L. Pitt, Agent.
                                         per C. M.

The words "Not negotiable or assignable," were printed across the face of the bill in large black type. The lumber reached Tacoma on November 9 following, and on that date the carrier delivered it to Savage Bros., who subsequently paid McDonald the purchase price. On November 13, following, the respondent received the bill of lading, without indorsement, and the invoice properly assigned, from the Citizens State Bank of Puyallup, and on the 15th day of November paid said bank therefor the sum of $243.10. Thereafter and for a period of two months or more, the respondent sought to collect the value of the lumber from Savage Bros. Its efforts in this behalf proving unsuccessful, it demanded payment from the appellant on September 2, 1908. This demand proving unavailing, it instituted this action, which terminated in a judgment in its favor. From such judgment, this appeal has been taken.

Numerous questions are argued in the respective briefs, but the view we take of the question brings it within a reasonably narrow compass. The applicable provisions of our code are as follows:

"A bill of lading or warehouse receipt is an instrument in writing signed by a carrier, warehouse proprietor, or his agent, describing the freight so as to identify it, stating the name of the consignor or owner, the terms of the contract for carriage or storage, and agreeing or directing that the freight be delivered to the order or assigns of a specified person at a specified place." Bal. Code, § 3590 (P. C. § 6780).

"All bills of lading, and transportation receipts of every kind, are hereby declared negotiable, and may be transferred by indorsement of the party to whose order such check or receipt was given or issued, and such indorsement shall be deemed a valid transfer of the commodity represented by such receipt, and may be made either in blank or to the order of another." Bal. Code, § 3598 (P. C. § 8920).

"When a bill of lading or warehouse receipt is made to 'bearer' or in equivalent terms, a simple transfer thereof by delivery conveys the same title as an indorsement." Bal. Code, § 3600 (P. C. § 6781).

"A bill of lading or warehouse receipt does not alter the rights or obligations of the carrier or warehouse proprietor as defined in this chapter, unless it is plainly inconsistent therewith." Bal. Code, § 3601 (P. C. § 6782).

At common law a delivery of goods to the carrier billed to a named consignee vested the title in such consignee. *Osborne & Co. v. Van Atten*, 3 Wash. T. 53, 13 Pac. 242; *Whitman Agricultural Co. v. Strand*, 8 Wash. 647, 36 Pac. 682. In such case, aside from the statute, unless the consignors stipulated otherwise in the bill of lading, or the carrier has notice to control the effect of the document, it is exonerated from liability by a delivery to the consignee. *Lawrence v. Minturn*, 58 U. S. 100, 15 L. Ed. 58; *The Sally Magee*, 3 Wall. 451, 18 L. Ed. 197; *Southern Express Co. v. Dickson*, 94 U. S. 549, 24 L. Ed. 285; *Nebraska Meal Mills v. St. Louis etc. R. Co.*, 64 Ark. 169, 62 Am. St. 183, 38 L. R. A.

358; *Orange County Fruit Exchange v. Hubbell*, 10 N. M. 47, 61 Pac. 121; *Scharff v. Meyer*, 133 Mo. 428, 34 S. W. 858, 54 Am. St. 672; *Scammon v. Wells, Fargo & Co.*, 84 Cal. 311, 24 Pac. 284; *Southern Express Co. v. Williams*, 99 Ga. 482, 27 S. E. 743; *Weisman v. Philadelphia etc. R. Co.*, 22 R. I. 128, 47 Atl. 318; *Nashville etc. R. Co. v. Grayson County Nat. Bank*, 100 Tex. 17, 93 S. W. 431; 1 Hutchinson, Carriers (3d ed.), par. 181; 6 Cyc. 468.

It is true that the books speak of the bill of lading as a symbol of the property, and statements are found to the effect that a delivery of the bill of lading is a symbolic delivery of the property, and a transfer of such property to the holder of such bill of lading. We apprehend that the true meaning of this language is that such delivery by the consignor only operates as a transfer of property or some interest in it when there is a stipulation in the bill itself whereby an ownership is retained in the consignor. It would certainly involve an absurdity to say that, where the goods are consigned to a named consignee, title passes to such consignee, and at the same time to announce that an indorsement or delivery of such bill to a third party by the consignor passes an interest in the property. It is only a symbol of the property where the consignor upon the face of the bill reserves an interest.

The first point urged by the appellant is that no title passed to the respondent, for the reason that the bill of lading was not indorsed. At common law the bill of lading was regarded as a symbol of the property, and the interest of the consignor in the property passed either by an indorsement or a delivery of the bill of lading. *City Bank v. Rome etc. R. Co.*, 44 N. Y. 136; *First Nat. Bank of Green Bay v. Dearborn*, 115 Mass. 219, 15 Am. Rep. 92; *Barnum Grain Co. v. Great Northern R. Co.*, 102 Minn. 147, 112 N. W. 1030, 1049. It has been held that the statute does not change this rule. *Scharff v. Meyer, supra.* We think that .

this view would be sound where the bill of lading was in its terms in conformity with the statute, but the conclusion we have reached as to the effect of this particular bill of lading renders it unnecessary for us to determine this question.

The respondent contends that *First Nat. Bank v. Northern Pac. R. Co.*, 28 Wash. 439, 68 Pac. 965, is controlling in its behalf. In that case a quantity of wheat was billed to a named consignee without any reservation or stipulation in favor of the consignor, and the bill of lading contained no words of negotiability. An examination of this case discloses that the consignor upon the shipment sold and indorsed the bill of lading to the plaintiff for the actual consideration of the purchase price of the wheat; that the carrier, without actual notice of the interest of the plaintiff, delivered the wheat to the consignee, who refused to pay therefor; that the plaintiffs demanded the delivery of the wheat from the carrier, which delivery it refused. Upon these facts we held that the refusal of the carrier to deliver the wheat to the holder of the bill of lading was conversion, and affirmed a judgment against it for the value of the wheat. The appellant urges with great earnestness that this case does not correctly construe the statute. In view of the fact that it announces a rule upon which the title to property and the security of large business transactions depend, we will adhere to the rule of construction which it announces.

This conclusion, however, does not require an affirmance of the judgment. We have seen that § 3601 of our code provides, that

"A bill of lading or warehouse receipt does not alter the rights or obligations of the carrier or warehouse proprietor as defined in this chapter, unless it is plainly inconsistent therewith." Bal. Code, § 3601 (P. C. § 6782).

The bill of lading in the instant case does not conform to the requirements of the statute as to the elements of a negotiable bill of lading. It is, in effect, a receipt for the lum-

ber, and a contract between the shipper and the carrier that it shall be neither negotiated nor assigned. If any effect is to be given to the language of the section of the statute last quoted, it must be construed as permitting the parties to the contract of shipment to engage, as they did in this case, that the goods shall be shipped and delivered to the consignee and none other. This view harmonizes with a sound construction of the statute as an entirety. Aside from the section last quoted, there is a strong inference from the language used in the preceding sections that the parties to the contract may agree upon a bill of lading that is not negotiable, within the meaning of the statute. The statute announces a rule of public policy under which the shipper may demand a negotiable bill of lading, or he may likewise accept one that is not negotiable. One who accepts an assignment of a contract, which by express terms is made nonassignable, acquires only a cause of action against the assignor. *Behrens v. Cloudy,* 50 Wash. 400, 97 Pac. 450; *Burck v. Taylor,* 152 U. S. 634, 14 Sup. Ct. 696, 38 L. Ed. 578; *Omaha v. Standard Oil Co.,* 55 Neb. 337, 75 N. W. 859; *Zetterlund v. Texas Land & Cattle Co.,* 55 Neb. 355, 75 N. W. 860; *Andrew v. Meyerdirck,* 87 Md. 511, 40 Atl. 173.

The respondent further urges that we should adopt the view announced in *Barnum Grain Co. v. Great Northern R. Co., supra.* This case arose in the state of Minnesota, which had a statute similar to Bal. Code, § 3598 (P. C. § 8920), except it provides "that all warehouse receipts or bills of lading which shall have the words 'nonnegotiable' plainly written or stamped on the face thereof shall be exempt from the provisions of this act." The court held that the only effect of these words was to exempt such bills from the operation of the statute; that they were assignable as at common law by delivery, and that the delivery of the bill of lading transferred the goods which it represented. This view is not in harmony with the cases which we have cited, and is in con-

flict with the rule announced in *Nashville etc. R. Co. v. Grayson County Nat. Bank, supra,* which is, in our opinion, a correct view of the common law. The respondent also cites the following cases, and urges that they support the judgment: *Dows v. National Exchange Bank of Milwaukee,* 91 U. S. 118, 23 L. Ed. 214; *The Telegraph v. Gordon,* 81 U. S. 258, 20 L. Ed. 807; *Merchants Bank v. Union R. & Transp. Co.,* 69 N. Y. 373; *First Nat. Bank of Green Bay v. Dearborn, supra; First Nat. Bank of Cairo v. Crocker,* 111 Mass. 163; *City Bank v. Rome etc. R. Co., supra; Bank of Rochester v. Jones,* 4 N. Y. 497.

In the *Dows, Merchants Bank, Bank of Cairo,* and *City Bank* cases, the bills of lading were drawn to the order of the consignor. In the *First Nat. Bank of Green Bay* case, the consignor drew upon the consignee and delivered the bill of lading as security for the amount advanced upon the draft. The goods were consigned to the drawee, who refused to receive them or pay the draft. In an action by the holder of the bill of lading against the sheriff holding under a writ of attachment against the consignor, the former was permitted to recover. In the *Bank of Rochester* case, the consignor, the owner of the flour, consigned it to his factor, who had no interest in the goods. It was held that the delivery of the bill of lading to a bank advancing money upon it gave the latter a special property in the case. The factor having received and sold the flour, it was held that the bank could maintain trover against it. The facts in these several cases clearly distinguish them from the one at bar.

The views herein expressed necessitate a reversal of the judgment and a dismissal of the action, and it is so ordered. The appellant will recover its costs.

RUDKIN, C. J., FULLERTON, CHADWICK, and MORRIS, JJ., concur.