[No. 12014.   Department One.   September 21, 1914.]

## ORILLA LUMBER COMPANY et al., Appellants, v. CHICAGO, MILWAUKEE & PUGET SOUND RAILWAY COMPANY et al., Respondents.[1]

SALES—OF GOODS—WHEN TITLE PASSES—BONA FIDE PURCHASERS. Where the agent of the consignor of lumber presented the bill of lading and invoice to the consignee and requested payment of ninety per cent of purchase price, according to the terms of sale, but left the papers in the consignee's office upon assurance that the invoice would be checked up and the lumber paid for, the consignee, however, later refusing to pay or surrender the bill of lading, title to the lumber remained in the consignor, and although the consignee transferred the lumber to a bona fide purchaser for value and without notice.

SAME—TRANSFER OF TITLE—BILL OF LADING. In such case, the fact that the consignee was also named in the bill of lading as consignor would not change the rule, since the presumption of ownership arising from a transfer of the bill of lading may be explained or rebutted by evidence showing the real ownership of the goods.

[1]Reported in 143 Pac. 152.

Appeal from a judgment of the superior court for King county, Ronald, J., entered March 13, 1914, upon findings in favor of the intervener, in an action of replevin, tried to the court.   Reversed.

*Million & Houser* and *George Friend*, for appellants.

*Ernest B. Herald* and *William A. Holzheimer*, for respondents.

GOSE, J.—This is an action of replevin, brought by the Orilla Lumber Company, a corporation, against the defendant railroad company, to recover a carload of lumber. The Pioneer Lumber Company intervened, alleging that it owned the lumber. Pending the action, a receiver was appointed for the Orilla Lumber Company. The Pioneer Lumber Company prevailed below. This appeal followed. The Orilla Lumber Company will hereafter be referred to as the appellant.

The facts are these: The appellant sold the lumber in controversy to the Alexander Page Lumber Company. The terms of the sale were ninety per cent cash, to be paid on the presentation of the invoice and bill of lading. The lumber was put aboard the car at Orilla. The railroad company issued a straight, nonnegotiable bill of lading, in conformity with the provisions of Rem. & Bal. Code, § 3386 *et seq.* (P. C. 433 § 5). Alexander Page Lumber Company was named in the bill of lading as both the consignor and the consignee. On the same day, an employee of the appellant presented the bill of lading and invoice to the Page Lumber Company, and demanded payment conformably to the terms of the sale.

The court found that the appellant,

"by its agent, C. S. Gregory, took said bill of lading and the invoice for said lumber and presented the same to the Alexander Page Lumber Co. at the city of Seattle on said date and requested the payment of 90% of the agreed purchase price therefor, and that at said time Alexander Page, the

manager, was not in the office, but the man in charge of the office requested said Gregory to leave said bill of lading and invoice so that it could be checked up and returned at one o'clock p. m. of said day and get a check for said 90%, and that pursuant to said suggestion said Gregory left said bill of lading and invoice in the office of the Alexander Page Lumber Co. and thereafter at one o'clock p. m. of said day he returned and demanded on behalf of the plaintiff that said Alexander Page Lumber Co. should pay the said 90% or return said bill of lading, but was informed by said Alexander Page that neither the money would be paid nor the bill of lading returned, and that thereafter at about four o'clock p. m. of said day said Gregory again visited the office of said Alexander Page Lumber Co. and again demanded the return of said bill of lading or the payment of said 90%, at which time he was informed by said Alexander Page that they had disposed of the bill of lading and would not return the same and would not pay the said 90%."

It also found that, the day following the issuance of the bill of lading and its presentation to the consignee, the appellant unloaded the car; that a day or two later, the railroad company, against the protest of the appellant, reloaded the lumber and moved the car to Seattle; that thereafter the appellant replevined and took possession of the lumber and sold it. The court further found that the Page Lumber Company, on the day it got possession of the bill of lading, sold the lumber to the respondent, and transferred and delivered the bill of lading to it, and that it was a purchaser for value and without notice. We accept the findings of the court, supplemented by our own statement of the facts, as in harmony with the evidence.

The single question presented by the appeal is, Did the respondent, a purchaser from the Page Lumber Company for value and without notice, acquire title? The general rule is that, where goods are sold upon condition that the price therefor shall be paid upon receipt of an invoice of the goods, the sale is for cash, and the title remains in the seller until the goods are paid for. This is true although the goods

have been delivered to the consignee and sold by it to a *bona fide* purchaser without notice. *Hirschorn v. Canney*, 98 Mass. 149; *Stollenwerck v. Thacher*, 115 Mass. 224; *Hart v. Boston & M. R. R.*, 72 N. H. 410, 56 Atl. 920; *Harmon v. Goetter*, 87 Ala. 325, 6 South. 93. In the *Hirschorn* case, it was held that, where goods were sold and delivered upon the condition that the purchaser should send his notes in payment, the title did not vest in the purchaser until he performed the condition, and that the vendee could convey no title to a *bona fide* purchaser as against a vendor who had not been guilty of laches. The court said:

"It is difficult to see how he can give a good title to a *bona fide* purchaser any more than the bailee of a horse to go a journey can make a valid sale of the horse. If he has no title, how can he communicate one?"

The precise question was before the court in *Stollenwerck v. Thacher, supra*. There an agent of the consignor, who was directed to hold a bill of lading until the draft for the purchase price of the goods was paid, delivered the bill of lading unconditionally, it being indorsed in blank. The person to whom the bill of lading was delivered then transferred the goods to the defendant as security for the payment of advances. In considering the rights of the contending parties, the court said:

"But so long as the bill of lading remains in the hands of the original party, or of an agent intrusted with it for a special purpose, and not authorized to sell or pledge the goods, a person who gets possession of it without the authority of the owner, although with the assent of the agent, acquires no title as against the principal. *National Bank of Green Bay v. Dearborn, ante*, 219; *Gurney v. Behrend*, 3 E. & B. 622, 632; *Pease v. Gloahec*, L. R. 1 P. C. 219, 228. In the present case, Baker, being a special agent authorized to deliver the bill of lading only upon payment of the bill of exchange drawn against the goods and attached to the bill of lading, could not bind his principals by a delivery made without such payment. To hold otherwise would be to allow a person, intrusted with goods merely for the purpose

of collecting the price and then delivering them, to sell them on credit. The authority of Baker, being special and limited, could not be enlarged by his own declarations. *Mussey v. Beecher*, 3 Cush. 511. It follows that Gray & Company, not having paid the draft, nor acquired possession of the bill of lading with the plaintiffs' consent, had no property in the goods, and could convey none to the defendants, so as to defeat the plaintiffs' title. The plaintiffs are therefore entitled to recover."

This court announced a like view in *Rumpf v. Barto*, 10 Wash. 382, 38 Pac. 1129.

The fact that the Page Lumber Company was named in the bill of lading as both consignor and consignee does not change the rule. The general rule is that bills of lading stand as the substitute and representative of the goods described therein.

"The transfer of the bill passes to the transferee the transferror's title to the goods described, and the presumption as to ownership arising from the bill may be explained or rebutted by other evidence showing where the real ownership lies. A pledgee to whom a bill of lading is given as security gets the legal title to the goods and the right of possession only if such is the intention of the parties, and that intention is open to explanation. Inquiry into the transaction in which the bill originated is not precluded because it came into the hands of persons who may have innocently paid value for it." *The Carlos F. Roses*, 177 U. S. 655.

These authorities announce the general principles of law as applied to such transactions. The case here, however, is much stronger for the appellant. There was not only no intention to deliver the bill of lading, but there was no delivery. The appellant's agent, whose authority was limited to presenting the bill of lading and invoice for the purpose of receiving payment according to the terms of the contract, left the bill of lading in the respondent's office upon the assurance of the party in charge of the office that he would check up the invoice and pay for the goods. When he later returned to receive the money, the Page Lumber Company

refused to either pay for the goods or surrender the bill of lading. It is, of course, true that upon the face of the bill of lading the Page Lumber Company was the apparent owner of the lumber, but it was not the real owner. The appellant has been guilty of neither laches nor negligence. It did the usual thing—presented the bill of lading and invoice for payment; and the bill of lading was retained against its protest, and payment refused.

The respondents have cited a line of cases which hold that one who acquires title to chattels by fraud may transfer an unimpeachable title to a good-faith purchaser; and also holding that, where the seller has a voidable title, a buyer for value and without notice acquires a good title. These are cases, however, where title had passed and the seller sought to rescind because of the fraud of the vendee. The distinction between the two classes of cases is that, in the case at bar, title did not pass.

The judgment is reversed, with directions to enter a judgment in favor of the receiver of the appellant.

CROW, C. J., MAIN, ELLIS, and CHADWICK, JJ., concur.