# Nashville, Chattanooga & St. Louis Railway Company v. Dreyfuss-Weil Company.

(Decided October 31, 1912.)

## Appeal from McCracken Circuit Court.

1. Carriers—Notice of Shipment of Goods—Loss of Goods.—When goods are shipped by the consignors consigned to "our order, notify H" and H is notified, but refuses to accept the goods, it is incumbent on the carrier to notify the shippers of this and failing to do so he is liable for the loss of the goods while lying in his warehouse by reason of a fire occurring without his fault.

2. Carriers—Initial Carrier—Liability for Loss of Goods.—Under the Carmack Amendment to the interstate commerce act the initial carrier is liable for the loss of the goods by a connecting carrier although held by him at the time as a warehouseman and not as a carrier.

WHEELER & HUGHES for appellant.

BRADSHAW & BRADSHAW for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

On October 23, 1907, Dreyfuss-Weil Company shipped from Paducah, Ky., to DeSoto, Georgia, a lot of whiskey by the Nashville, Chattanooga & St. Louis Railway Company, which issued for it a through bill of lading by which the goods were consigned as follows: "Our order, DeSoto, Georgia, notify R. E. Howe." The Nashville, Chattanooga & St. Louis Ry. Co., carried the whiskey to the end of its line and delivered it to the Seaboard Air Line Railway Company which took it to DeSoto, Georgia, on November 4, 1907, and placed it there in its freight depot. It promptly notified R. E. Howe, of the arrival of the goods. Howe refused to accept them. No notice of this was given Dreyfuss-Weil Company. The whiskey remained there in the depot building until November 26, 1907, when the building and its contents were totally destroyed by fire, through no negligence of the railway company. Dreyfuss-Weil Company brought this suit against the initial carrier, the Nashville, Chattanooga & St. Louis Ry. Co., to recover for the loss of the whiskey and judgment having

been rendered in its favor for the value of the whiskey, $286.08 on the facts above stated, the railway company appeals.

The liability of the appellant must be determined under the act of Congress regulating interstate transportation. The provision of the act forbidding the initial carrier from limiting its liability to its own line, commonly known as the Carmack Amendment, is in these words:

"That any common carrier, railroad or transportation company receiving property for transportation from a point in one State to a point in another shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property, caused by it or by any common carrier, railroad or transportation company to which such property may be delivered, and over whose lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed. Provided: That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.

"That the common carrier, railroad or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad or transportation company on whose line or lines, damage or injury shall have been sustained the amount of such loss, damage or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment or transcript thereof."

By this act the initial carrier must give a receipt or bill of lading for the property and shall be liable to the holder for any loss of the property caused by it or by any railroad or transportation company to which the property may be delivered. But, it is insisted that when the property reached DeSoto, Georgia, and R. E. Howe was notified of its arrival and refused to take it the contract of the carrier was at an end and that the Seaboard Air Line then held the property simply as a warehouseman. It is also insisted that the property having been burned by reason of a fire not due to any negligence of that company, it is not responsible and that if it is re-

sponsible its liability is only that of a warehouseman and that the initial carrier is not responsible for this.

When the goods reached DeSoto, Georgia, and R. E. Howe, on being notified of their arrival, refused to accept them it was incumbent upon the carrier to notify Dreyfuss-Weil Company of this fact for if they had been notified that their goods were there they might have taken steps to protect themselves. The bill of lading showed that the goods were the property of Dreyfuss-Weil Company. The goods were consigned to their order. While there is some conflict in the decisions on the subject the better rule is: That where the consignee refuses to accept the goods the carrier must notify the consignor of this fact if the bill of lading is sufficient to show that he is the owner of the goods. This rule has the approval of the United States Supreme Court and the Supreme Court of Georgia. (See Amer. Sugar Refining Co. v. McGehee, 96 Ga., 27; Hutchison on Carriers, section 721, 3rd Ed.) When Howe refused to accept the goods, the carrier held them subject to the shipper's order and notice to the shipper was essential to his protection. We, therefore, conclude that the Seaboard Air Line having failed to notify Dreyfuss-Weil Company of the refusal of Howe to accept the goods was liable to the shipper for the subsequent destruction of the goods while lying in its warehouse.

It remains to determine whether the initial carrier is responsible for the default of the Seaboard Air Line. In the act of Congress referred to the term "transportation" is thus defined: "The term 'transportation' shall include cars and other vehicles and all instrumentalities and facilities of shipment or carriage, irrespective of ownership or of any contract, express or implied, for the use thereof, and all services in connection with the receipt, delivery, elevation, and transfer in transit, ventilation, refrigeration, or iceing, storage and handling of property transported." In view of this definition of "transportation" and the broad language of the Carmack Amendment the latter must be presumed to have been intended by Congress to go as far as Congress had power to regulate the subject and to make the initial carrier liable for any loss of the property until its interstate shipment was completed. That the property was still in interstate commerce must, under numerous decisions, of the United States Supreme Court, be ad-

mitted and this being true Congress had the power to regulate the liability of the several carriers. The plain purpose of the act was to make the initial carrier responsible to the owner of the property and to allow it to look to its connecting line for reimbursement. The act should be construed so as to carry out its purposes and not to defeat the legislative intention in its enactment as shown by the act as a whole. Read in this way, the act makes the initial carrier responsible for the delivery, elevation, ventilation, iceing, storing or handling of the property transported by any of its connecting lines.

Judgment affirmed.