[No. 11703.   Department Two.   June 20, 1914.]

M. L. Coovert *et al., Respondents,* v. Spokane, Portland and Seattle Railway Company, *Appellant.*[1]

Carriers—Of Goods—Wrongful Delivery—Bill of Lading—Liability of Carrier. An interstate carrier is liable for consigned goods delivered to the consignee and lost to the consignor, where, before delivery, the consignor notified the carrier of the consignee's refusal to accept the goods, surrendered the bill of lading to the carrier, and directed a return of the goods, both at common law, and under 34 Stat. at L. p. 595, providing that, in receiving property for interstate transportation, carriers shall issue a bill of lading and shall be liable to the lawful holder thereof for any loss, damage, or injury to the property caused by it or by connecting carriers over whose lines the property passes.

Same—Wrongful Delivery—Act of Connecting Carrier—Liability. In such a case, the initial carrier's duty does not end by merely carrying the goods to their destination safely, but it must make delivery to the persons entitled to receive them or store them subject to the consignor's orders; hence it cannot avoid liability under the above Federal act by the fact that a connecting carrier made the delivery.

Appeal from a judgment of the superior court for Clarke county, McMaster, J., entered August 14, 1913, upon findings in favor of the plaintiffs, in an action for conversion, tried to the court. Affirmed.

*Carey & Kerr* and *Charles A. Hart,* for appellant.

*Connor & Akins,* for respondents.

Fullerton, J.—On March 10, 1910, the respondents delivered to the appellant, at Vancouver, in this state, three boxes of goods for shipment to the Mutual Manufacturing Company, at Canton, in the state of Ohio. At the time of receiving the goods, the appellant issued to the respondents a through bill of lading, on its regular form, reciting therein that the goods were received for transportation to Canton, Ohio, and naming therein the Mutual Manufacturing Com-

[1]Reported in 141 Pac. 324.

pany as consignee thereof. The appellant's lines do not extend through Canton, Ohio, and in transporting the goods, it delivered them to the Pennsylvania Railroad Company, a connecting carrier, at some point on that company's line.

On receiving the bill of lading, the respondents sent it by mail to the consignee of the goods, with a letter in which they announced the shipment. Some ten days later, the consignee returned the bill of lading by mail to the respondents, stating in a letter enclosed therewith that it would not receive the goods. The respondents thereupon notified the appellant of the attitude of the consignee, and gave directions to have the goods returned to them at Vancouver, at the same time surrendering to the appellant the bill of lading and guaranteeing the charges on the return shipment. The agent of the appellant at Vancouver, on April 16, 1910, addressed a letter to the agent of the Pennsylvania Railroad Company, at Canton, Ohio, advising that company of the surrender of the bill of lading, and requesting it to return the goods to the respondents at Vancouver, over the same route on which they were shipped. The Pennsylvania Railroad Company did not follow the instructions given it, for what cause the record is silent, and on April 25, 1910, some nine days after the letter had been mailed it, delivered the goods to the consignee. The goods were lost to the respondents, and this action was instituted against the appellant to recover their value. Recovery was allowed in the court below, and this appeal is taken from the judgment entered.

The appellant makes two principal contentions for reversal; first, that the delivery was not wrongful; and, second, that it is not responsible, being the initial carrier, for the failure of the Pennsylvania Railroad Company, the connecting carrier, to observe the directions for the return of the goods. In support of the first contention, it is argued that, since the goods were consigned to a named consignee without restriction or reservation of any sort in the bill of lading, the goods were presumptively the property of the consignee, and

that it fulfilled its contract of carriage when it safely carried the goods to their destination and then delivered them in good order to the named consignee; that the consignor's sole remedy for the recovery of goods so consigned is the right of stoppage *in transitu*, and since the consignors in this case did not avail themselves of this right, it was the carrier's contract duty to deliver the goods to the consignee, and any deviation from that duty would have been at its peril.

But the rule, we think, was never as broad as this argument implies. The cases determined prior to the passage of the Carmack amendment of act to regulate commerce (34 Stat. at Large, 584), are, seemingly, inharmonious on the question whether a carrier can, with impunity, deliver a consignment of goods to the consignee named in the bill of lading without production of the bill of lading, even in instances where it has no knowledge that the consignee is not in the possession of the bill of lading, or it is without knowledge that the right to receive the goods is claimed by some person other than the consignee. See *Nebraska Meal Mills v. St. Louis Southwestern R. Co.* (Ark.), 38 L. R. A. 358, and cases collected in note. But we think the cases were practically uniform to the effect that a carrier delivered consigned goods to the consignee without the production of the bill of lading at its peril when it had knowledge, or reasonable cause to believe, that the consignee did not have the full beneficial interest in the goods. Our own case of *First Nat. Bank of Pullman v. Northern Pac. R. Co.*, 28 Wash. 439, 68 Pac. 965, is to this effect. There the consignor shipped two car loads of wheat by the railway company consigned to a flouring mill company. On receipt of the bills of lading, the consignor endorsed them to the plaintiff bank, receiving from the bank in cash the purchase price of the wheat. The railway company carried the wheat to its destination and delivered it to the consignee without requiring the production of the bill of lading. In an action by the

bank against the railway company for the amount advanced on the bills of lading, it was held that the railway company had notice of the custom of the dealer to pledge the bills of lading for advances on shipments, and that it was bound to notice this custom and was responsible to the bank for the money advanced. This was, however, an intrastate shipment and the decision was rested in part on the local statutes. The rule, however, as shown in the note to the case from the Lawyers Reports Annotated before cited, applies to interstate shipments.

We think, moreover, this question is concluded by the Federal statute. The amendment of the act to regulate commerce above cited, provides:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed; . . ." (34 Stat. at· Large, p. 595.)

This provision of the statute, it will be observed, makes it the duty of a common carrier receiving property for interstate transportation to issue a receipt or bill of lading to the consignor of such property, and makes it liable to any lawful holder of such receipt or bill of lading for any loss, damage, or injury to such property caused by it, or by any common carrier to which the property may be delivered or over whose lines such property may pass. Clearly, the statute recognizes the lawful holder of the bill of lading as the person entitled to receive the shipment, regardless of whom may be named as consignee, and this being true, the carrier delivers the goods transported at its peril, when it delivers

without the production of the bill of lading. It cannot, we think, be questioned in this instance that the consignors of the goods were the lawful holders of the bill of lading at the time of the delivery of the goods to the consignee. The consignee had theretofore returned the bill of lading to the consignors with notice that it would not receive the goods; the consignors had notified the railway company of this refusal, had surrendered to it the bill of lading, and had directed a return of the goods. A delivery to the consignee under these circumstances was a conversion of the goods rendering the company liable for their value to the consignors.

The contention of the appellant that it is not liable as an initial carrier for the loss of this particular shipment, is based on the claim that it performed its contract of carriage; since it carried the goods safely from the point of shipment to the point of destination, and the wrong committed, if any, was committed by the connecting carrier. But the duty of an initial carrier with reference to goods transported does not end by merely carrying the goods to their destination safely. Delivery to the person entitled to receive the same, or, if delivery cannot be made, then safe storage subject to the orders of the consignors, is a part of the contract of carriage. The appellant performed neither of those obligations. It neither delivered the goods to the person entitled to receive them, nor did it store them subject to the order of the consignor. It is, therefore, liable for the loss, as the initial carrier, under the Federal statute above cited. *Atlantic Coast Line R. Co. v. Riverside Mills*, 219 U. S. 186; *Galveston, H. & S. A. R. Co. v. Wallace*, 223 U. S. 481; *Chicago & A. R. Co. v. Kirby*, 225 U. S. 155; *Nashville, C. & St. L. R. Co. v. Dreyfuss-Weil Co.*, 150 Ky. 333, 150 S. W. 321; *Central Georgia R. Co. v. Sims*, 169 Ala. 295, 53 South. 826.

The judgment is affirmed.

CROW, C. J., MOUNT, MORRIS, and PARKER, JJ., concur.