[No. 12731.  Department One.  August 31, 1915.]

## STATE BANK OF BUCKLEY, *Respondent*, v. NEBRASKA BRIDGE SUPPLY & LUMBER COMPANY, *Appellant*.[1]

BILLS AND NOTES—BILLS OF LADING—NEGOTIABILITY—RIGHTS OF BONA FIDE HOLDER. Where, upon the sale of lumber, the bills of lading, naming the seller as consignor, and the purchaser or its representative as consignee, were, by the consignor, assigned for value without notice that the purchase price of the lumber had been paid, the assignee is entitled to the lumber or the purchase price thereof, where the bills of lading were not stamped upon their face "not negotiable," as is required upon nonnegotiable bills of lading by Rem. & Bal. Code, § 3386, and contained no words of similar import.

Appeal from a judgment of the superior court for King county, Albertson, J., entered April 23, 1914, upon findings in favor of the plaintiff, in an action on contract, tried to the court.  Affirmed.

*M. H. Ingersoll*, for appellant.

*Winfield R. Smith*, for respondent.

PARKER, J.—The plaintiff seeks recovery of the invoice price of shipments of four car loads of lumber, made by the Clyde Lumber Company to the defendant, resting its right of recovery upon assignments to it by the Clyde Lumber Company of the invoices and the bills of lading issued by the carrier.  Trial before the superior court without a jury resulted in findings and judgment in favor of the plaintiff, from which the defendant has appealed.

Respondent is a banking corporation with its place of business at Buckley, in King county.  The appellant and the Clyde Lumber Company are corporations dealing in lumber, with places of business in King county.  On the 25th, 27th, 28th and 29th days of December, 1912, respectively, the Clyde Lumber Company delivered to the Northern Pacific

[1]Reported in 151 Pac. 253.

Railway Company a car load of lumber for shipment to W. D. Moreland at points in Iowa, Wisconsin and Minnesota. These shipments were so made at the request of appellant, in pursuance of an agreement for the sale of the lumber by the Clyde Lumber Company to appellant. We assume, therefore, that the effect is the same as if the shipments had been made direct to appellant. At that time, the Clyde Lumber Company was indebted to appellant in a sum equal to more than twice the total sale price of the lumber so shipped. It was agreed between the Clyde Lumber Company and appellant, a short time previous, that the sale price of the lumber should be credited upon the indebtedness due appellant from the Clyde Lumber Company. Instead of carrying out this agreement, the Clyde Lumber Company caused bills of lading to be issued by the railway company upon each of the shipments in its own name as consignor, naming W. D. Moreland as consignee. It then assigned and delivered to respondent the invoices for the lumber and the bills of lading and received from the respondent advances thereon. Respondent thereby became the owner and holder of the bills of lading and entitled to the lumber or the purchase price thereof, unless, by reason of the nonnegotiability of the bills of lading, such right did not accrue as against appellant. At the time of taking the assignments of the bills of lading and invoices, respondent had no knowledge of appellant's claim to the lumber, other than as the claim of a purchaser with the purchase price wholly unpaid. Respondent then forwarded to appellant by mail the assigned bills of lading and invoices, requesting payment of the purchase price of the lumber as shown by the invoices. Upon so receiving the assigned invoices and bills of lading, the appellant kept the same, neglected to pay the purchase price to respondent as demanded, and by the surrender of the bills of lading to the railway company, secured possession of the four car loads of lumber.

Counsel for appellant contend that, since the Clyde Lumber Company caused the bills of lading to be issued with the name of Moreland therein as consignee, that being the same in effect as if naming appellant as consignee, the delivery of the lumber to the railway company for shipment was in law the delivery to appellant, resulting in title then passing to appellant. This contention would possibly be well founded if the bills of lading were nonnegotiable, and upon their face imparted knowledge of their nonnegotiability to respondent. It seems to be conceded that the bills of lading were such that possession of the lumber could not have been obtained from the railway company at the points of destination without their surrender to the railway company. It is, in any event, not contended to the contrary. The bills of lading, copies of which are exhibits in the record before us, do not have printed or stamped upon their face the words "not negotiable," as required upon nonnegotiable bills of lading by Rem. & Bal. Code, § 3386 (P. C. 433 § 5), nor do they contain any words of similar import.

In *First Nat. Bank of Pullman v. Northern Pac. R. Co.*, 28 Wash. 439, 68 Pac. 965, it was held that the railway company's delivery of goods to a consignee designated in a bill of lading will not exonerate it from liability unless such delivery be made upon surrender of the bill of lading. The bill of lading there involved was not materially different from the one before us, and the railway company, having delivered the goods without procuring surrender of the bill of lading, was held liable in damages to the holder of the bill of lading as for wrongful delivery, notwithstanding it delivered the goods to the person named therein as consignee. Our later decision in *Coovert v. Spokane, Portland & Seattle R. Co.*, 80 Wash. 87, 141 Pac. 324, is in harmony with that holding. The logic of these decisions is that the holder of such a bill of lading becomes entitled to the goods, as against a consignee who is a purchaser from the consignor, which right of possession on the part of the holder of the bill of lading

is subject to be defeated by the payment to him of the purchase price by the consignee.    This is the ground of our decision in *Security State Bank v. O'Connell Lumber Co.*, 64 Wash. 506, 117 Pac. 271, holding, in effect, that such were the rights of the bank, plaintiff therein, it being in effect the purchaser from the consignor and holder for value in good faith of the bill of lading.    The facts in that case, though somewhat involved, as we view them, present, in their final analysis, the exact problem involved in this case, and the conclusion of the court there reached is, we think, decisive here in favor of respondent.    Our decision in the late case of *Orillia Lumber Co. v. Chicago, Milwaukee & P. S. R. Co.*, 84 Wash. 362, 146 Pac. 850, in so far as applicable here, lends support to this conclusion.

Counsel cite, and place some reliance upon, our decision in *Bonds-Foster Lum. Co. v. Northern Pac. R. Co.*, 53 Wash. 302, 101 Pac. 877.    That case, however, involved a bill of lading which was clearly nonnegotiable by reason of the fact that it had plainly indorsed thereon the words "not negotiable nor assignable."    Plainly, such an instrument is neither "a symbol of property" nor "a document of title," as negotiable bills of lading are sometimes termed.    *Security State Bank v. O'Connell Lumber Co., supra.*

We conclude that the judgment must be affirmed.    It is so ordered.

Morris, C. J., Mount, Holcomb, and Chadwick, JJ., concur.