**CHICAGO, R. I. & P. RY. CO. v. WALDO et al.**

No. 10938—Opinion Filed March 13, 1923.

Rehearing Denied July 10, 1923.

(Syllabus.)

**1. Carriers — Freight — Nonacceptance — Liability of Consignor for Demurrage.**

A common carrier is ordinarily chargeable with the duty of notifying the consignor of the consignee's failure or refusal to accept the goods, and where the consignee refuses to accept shipments in carload lots, and the carrier is not under the duty of unloading, the consignor is not liable for demurrage until he receives notice of such refusal.

**2. Same.**

Where goods are shipped to the consignor's order with directions to notify another person, if such person refuses to accept the shipment, it is the duty of the carrier to notify the consignor of such refusal, and the consignor is not liable for demurrage until he is notified of such refusal.

**3. Appeal and Error—Harmless Error.**

A judgment will not be reversed where, after an examination of the entire record, it does not appear that the errors complained of, including an erroneous instruction to the jury, have probably resulted in a miscarriage of justice, or constitute a violation of any constitutional or statutory right.

Error from District Court, Canadian County; James I. Phelps, Judge.

Action by N. B. Waldo against the Chicago, Rock Island & Pacific Railway Company and another to recover for demurrage paid. Judgment for plaintiff, and defendant named brings error. Affirmed.

K. W. Shartel, C. O. Blake, and W. R. Bleakmore, for plaintiff in error.

A. G. Morrison, for defendant in error.

NICHOLSON, J. This was an action by N. B. Waldo, one of the defendants in error, against the Chicago, Rock Island & Pacific Railway Company, plaintiff in error, and St. Louis & San Francisco Railway Company, one of the defendants in error, to recover the sum of $20, as penalty for delay in transporting a carload of hay, and the sum of $33, demurrage on said car, which it is claimed was wrongfully collected of the plaintiff by the defendant St. Louis & San Francisco Railway Company. A trial to a jury resulted in a verdict in favor of the plaintiff and against the defendant Chicago, Rock Island & Pacific Railway Company for the sum of $33, and in favor of the defendant St. Louis & San Frisco Railway Company. Upon this verdict, judgment was duly rendered, from which the Chicago, Rock Island & Pacific Railway Company has appealed.

A statement of the controversy involved may be summarized as follows: On the 17th day of March, 1917, the plaintiff, N. B. Waldo, a resident of El Reno, and engaged in the hay and grain business in that city under the firm name of El Reno Hay Company, delivered a carload of hay to the defendant Chicago, Rock Island & Pacific Railway Company at Union City, a town on its line, about 10 miles south of El Reno, to be transported to the town of Idabel, located on the line of the St. Louis & San Francisco Railway Company in the southeastern part of the state; said hay being consigned to the El Reno Hay Company at Idabel with instructions to notify W. A. Carey at Idabel. The hay was transported by the Chicago, Rock Island & Pacific Railway Company over its line to Holdenville, where it was delivered to the St. Louis & San Francisco Railway Company on March 27, 1917. Upon the arrival of said hay at Idabel on March 29, 1917, W. A. Carey was by the agent of the St. Louis & San Francisco Railway Company notified of the arrival of said hay, but refused to accept the shipment, claiming that he had not ordered it. This agent testified that on April 2, 1917, he sent telegrams over the railroad wires addressed to the agents of the Chicago, Rock Island & Pacific Railway Company at Union City and El Reno, and to the claim office of the St. Louis & San Francisco Railway Company at Springfield, Mo., advising that the hay shipped to N. B. Waldo Feed & Milling Company was refused; that, receiving no order for the disposition of the hay, he again wired the same parties on April 10, 1917, calling attention to his former wires and again referring to the car of hay consigned to N. B. Waldo Feed & Milling Company. The testimony of an employe of the Chicago, Rock Island & Pacific Railway Company at El Reno was to the effect that he could find no record of the receipt of the first message, and that upon the receipt of the second message the plaintiff was notified of the refusal of said shipment; that the plaintiff thereupon directed that the hay be transported to Broken Bow, Okla., and a new shipper's order bill of lading was issued on April 12th under which the hay was consigned to N. B. Waldo Feed & Milling Company at Broken Bow, with instructions to notify L. B. Whitefield. Sometime afterwards Whitefield remitted to the plain-

tiff the proceeds for the car of hay, but deducted the sum of $33, demurrage charges incurred at Idabel. The plaintiff immediately protested to the agent of the Chicago, Rock Island & Pacific Railway Company at El Reno concerning this charge, and upon the refusal of the company to reimburse him, brought this action.

Complaint is first made of the action of the trial court in overruling the demurrer of the defendant Chicago, Rock Island & Pacific Railway Company to the evidence of the plaintiff, and in refusing to direct the jury to return a verdict in favor of said defendant.

The first cause of action set out in plaintiff's petition was based upon section 1415, Rev. Laws 1910, the provisions of which require a shipment of freight to be carried forward at the rate of not less than 60 miles per day (24 hours), and allowing certain time for transferring from one road to another, and prescribing a penalty of $1 per day to be assessed against the carrier for the benefit of the consignee for failure to receive and transport such shipments within the time required; and the second cause of action was for the sum of $33, for demurrage on the carload of hay which plaintiff claims was wrongfully collected.

It appears from the evidence that the car was billed out of Union City on March 17th, and that it arrived at Idabel on March 29th, but there is no evidence showing the distance from Union City to Idabel, so the evidence was insufficient to sustain the first cause of action. The verdict was general, and there is nothing therein indicating that the jury found against the plaintiff on his first cause of action, but as the evidence was insufficient upon which to base a recovery thereon, and as the amount of the verdict corresponds with the amount sued for in the second cause of action, we assume that it was upon this that the verdict was based, and will direct our inquiry to the right of the plaintiff to recover the sum charged for demurrage.

By the rules of the Corporation Commission introduced in evidence, it is made the duty of the carrier to properly arrange for telegraphic information to be given the shipper on the refusal of the consignee to accept the shipment and the chief clerk of the freight office of the Chicago, Rock Island & Pacific Railway Company at El Reno testified that it was the custom under the rules of the Chicago, Rock Island & Pacific Railway Company for the agent at Idabel to notify the agent at Union City immediately upon the refusal of the consignee to accept the shipment, and under his custom it was the duty of the agent at Union City to notify the consignor, if his address was known. This rule and custom is in keeping with the general rule of law that the carrier is ordinarily chargeable with the duty of notifying the consignor of the consignee's failure or refusal to accept the goods (10 C. J. 270, 5 Thompson on Negligence, 6622); and the general rule is that the carrier must notify the consignor of the refusal of the consignee to accept shipments in carload lots, when the carrier is not under the duty of unloading, and until such notice is given the consignor is not liable for demurrage (10 C. J. 468; Baltimore & Ohio Railroad Co. v. Leulla Coal & Coke Co., 74 W. Va. 289, 81 S. E. 1044, 52 L. R. A. [N. S.] 398); and when, as in this case, the goods were shipped to the consignor's order with directions to notify another person, if such person refuses to accept the shipment, it is the duty of the carrier to promptly notify the consignor of such refusal (Nashville & St. L. Ry. Co. v. Dreyfuss-Weil Co. [Ky. App.] 150 S. W. 321; Stoddard Lumber Co. v. Oregon-Washington R. & Nav. Co. [Ore.] 165 Pac. 363).

It appears from the evidence that the agent at Idabel wired the agents at El Reno and Union City on April 2nd that the shipment had been refused, and that, receiving no response to their message, he again wired them on April 10th. The chief clerk in the local freight office at El Reno testified that he could find no record of the message of April 2nd, but neither the agent at El Reno nor the agent at Union City testified and there is nothing indicating that the message was not received by them. The evidence shows that the plaintiff was not notified of the refusal of the shipment until April 11th or 12th, at which time he was notified by both the agent at Union City and the freight office at El Reno. The plaintiff testified that he had made previous shipments from Union City to various points; that his address was at El Reno, but that he did not on this occasion inform the agent at Union City that his home was in El Reno, and left no instructions as to his address. Of course, if the failure of the agent at Union City to notify Waldo of the refusal of the shipment was due to Waldo's failure to disclose his name and address, and the agent had no knowledge thereof, this would excuse the company (10 C. J. 271); but there is nothing in the record indicating that such was the case. The

agent at Union City notified Waldo promptly upon receipt of the message of April 10th, so he must have known his name and address.

It is not claimed that Waldo was notified prior to April 11th or 12th, and the question of whether or not the messages of April 2nd were sent and received was a question of fact for the jury, and the court did not err in overruling the demurrer to the evidence, and in refusing to direct a verdict for the company.

Complaint is next made of instruction No. 7 given to the jury, which reads as follows:

"You are instructed that if you further find after said car arrived at Idabel, Okla., it was refused by W. A. Carey and that the defendant St. Louis & San Francisco Railway Company promptly thereafter arranged for information to be given the shipper of said refusal by notifying the agent of the Chicago, Rock Island & Pacific Railway Company, at Union City, and also at El Reno, Okla., by telegraph, and no instructions were received as to disposition of said car for several days thereafter, then, and in that event, the defendant would be entitled to demurrage charges and said plaintiff would not be entitled to receive the same back from said defendant St. Louis & San Francisco Railway Company; but if you further find that the agent of said Chicago, Rock Island & Pacific Railway Company failed to communicate said notice to the plaintiff, then plaintiff would be entitled to recover said demurrage from said defendant Chicago, Rock Island & Pacific Railway Company."

In our opinion, this instruction, when viewed in the light of the evidence, is not so glaringly erroneous as is contended. There was evidence of the custom prevailing under the rules of the Chicago, Rock Island & Pacific Railway Company with reference to giving notice; there was also evidence that the agent of the St. Louis & San Francisco Railway Company at Idabel notified the agent of the Chicago, Rock Island & Pacific Railway Company at Union City and El Reno of the refusal of the shipment by telegrams of April 2nd, and neither of these agents testified that these messages had not been received by them. The only evidence touching on the question of the receipt of these telegrams was that of the chief clerk of the local freight office at El Reno, and he merely testified that he had made a search and found no message from Idabel dated April 2, 1917. The fact that the clerk could not find the messages does not indicate that they were not received by the agents to whom they were sent, and, in the absence of evidence to the contrary, it

is but reasonable to presume that the messages were received by them. There is no evidence indicating that the name and address of Waldo were unknown to the agent at Union City. While the instruction given may be subject to criticism, it in effect states the law applicable to the facts. It was the duty of the defendants to notify Waldo of Carey's refusal of the shipment before demurrage could be charged, and by this instruction it was left to the jury to find against the company which failed in this duty. The jury found against the Chicago, Rock Island & Pacific Railway Company, and the verdict is sustained by the evidence and the inference that might reasonably be drawn therefrom.

The plaintiff in error sets out in its brief an instruction which it contends correctly states the law. We agree with counsel that this instruction would have been proper, and had it been requested, no doubt the trial court would have given it, but, unfortunately for the plaintiff in give this instruction, but presents it here for the first time, and clearly, error cannot be predicated upon the failure of the error, it did not request the trial court to give an instruction which was not requested.

An examination of the record convinces us that the errors complained of did not result in a miscarriage of justice and did not constitute a violation of any constitutional or statutory right, and a judgment will not be reversed unless such is the case. St. Louis & S. F. Ry. Co. v. Leger Mill Co., 53 Okla. 127, 155 Pac. 599; Chowning v. Ledbetter, 86 Okla. 269, 208 Pac. 829.

Perceiving no reversible error in the record, the judgment of the trial court is affirmed.

JOHNSON, V. C. J., and McNEILL, KENNAMER, COCHRAN, and BRANSON, JJ., concur.