TEXAS INSTRUMENTS INCORPORATED, Plaintiff, Appellee,

v.

BRANCH MOTOR EXPRESS CO., Defendant and Third-Party Plaintiff, Appellant,

v.

AIRLIFT INTERNATIONAL, INC., Third-Party Defendant.

No. 7595.

United States Court of Appeals, First Circuit.

Oct. 7, 1970.

J. Owen Todd, Boston, Mass., with whom Hale & Dorr, Boston, Mass., was on brief, for appellant.

Victor G. Fields, Brockton, Mass., for Texas Instruments Inc., appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

In 1965 the plaintiff, Texas Instruments Incorporated, ordered a precision, tape controlled drill machine from Leland-Gifford Company of Worcester, Massachusetts, for a purchase price of $19,390. On September 9, 1965, defendant, Branch Motor Express Co., carried the machine by truck from the Leland-Gifford plant in Worcester to Logan International Airport in Boston and delivered it to Airlift International. Airlift carried the machine by air to Atlanta, Georgia, where it was turned over to Delta Airlines. Delta carried it by air to Love Field, Dallas, Texas, and by truck, through one of its agents, Harris Delivery, to the Texas Instruments receiving dock.

When the machine arrived at Texas Instruments it was damaged and, after a brief inspection, plaintiff refused to accept delivery. Harris Delivery then returned the machine to Love Field, where it was partially uncrated, inspected and photographed by representatives of Texas Instruments and Leland-Gifford. Six or seven weeks later the machine was returned to the Leland-Gifford plant in Worcester, where it was again inspected. Texas Instruments brought suit against Branch under the Carmack Amendment, so-called, 49 U.S.C. § 20(11) (1964), which makes the initial carrier of a shipment in interstate commerce liable for any damages caused by subsequent carriers. The district court held for Texas Instruments, awarding it the full purchase price minus a $620 payment made in admission of liability by Delta. From that judgment defendant appealed.

Under the Carmack Amendment, a "shipper establishes his prima facie case when he shows delivery in good condition, arrival in damaged condition, and the amount of damages. Thereupon, the burden of proof is upon the carrier to show that it was free from negligence." Missouri Pac. R. R. v. Elmore and Stahl, 377 U.S. 134, 138, 84 S.Ct. 1142, 1145, 12 L.Ed.2d 194 (1964). In the instant case defendant admits that the machine was delivered to it in good condition and that it arrived damaged at Texas Instruments' receiving dock. It argues, however, that plaintiff failed to meet its burden of proof with respect to damages. It further says that since defendant's liability under the Carmack Amendment ended when the machine was delivered in Dallas, plaintiff must show the amount of damages on that date. Deer Park Baking Co. v. Cleveland and Chicago Motor Express Co., Ohio App., 46 Ohio L. Abst. 193, 68 N. E.2d 824 (1946). Yet plaintiff's only witness as to the amount of damages did not examine the machine until it was returned to Worcester six or seven weeks later. During that period the machine was never re-crated but remained exposed in a partially broken crate. Defendant contends that the likelihood of additional damage occurring during that period was great.

■ Plaintiff maintains that defendant's liability under the Carmack Amendment did not end when delivery was refused, because the tender of delivery was not a "proper" one inasmuch as the machine arrived damaged. But the cases requiring a proper tender of delivery, including the one cited by plaintiff, define a proper tender as one made at consignee's place of business during normal business hours. Hill v. Humphreys, 5 Watts & S. (Pa.) 123 (1842); Keystone Motor Freight Lines v. Brannon-Signaigo Cigar Co., 115 F.2d 736 (5th Cir. 1940). In that sense there was a proper tender of delivery in this case.

■■ Therefore the burden was on plaintiff to show the measure of damages on the date of delivery. Since the testimony as to damages related to the condition of the machine six or seven weeks subsequent to delivery, plaintiff had to show by a preponderance of the evidence that the machine did not decrease in value during that period. We believe plaintiff has met that burden. After Harris Delivery returned the machine to Love Field, it was photographed from five different angles. A witness present at Love Field when the photo-

graphs were taken identified them as a fair representation of the machine as it appeared at that time. Andrew L. Wilkinson of Leland-Gifford testified that the damage visible in the photographs was the same as the damage he saw when he examined the machine in Worcester. There was also extensive testimony regarding the severe damage to the machine apparent at Love Field on the delivery date.

It is true that the machine was not disassembled at Love Field and that only the exterior was inspected and photographed. However, there was abundant testimony indicating that this was a highly complex machine. It does not appear that the representatives of Texas Instruments and Leland-Gifford present at Love Field had at their disposal either the technical expertise or the equipment necessary to disassemble the machine and inspect its interior. Furthermore, it seems highly unlikely that the interior of the machine could have undergone any substantial additional damage without there being a significant change in its exterior appearance. Therefore, under the circumstances, it was a fair inference for the court to conclude that the damage to the machine when it arrived in Worcester was no greater than it had been seven weeks earlier at Love Field. Defendant offered no evidence tending to rebut this inference.

■ Defendant goes further and contends that plaintiff also had the burden of proving that the machine did not undergo any additional damage while being transported from the Texas Instruments receiving dock back to Love Field where it was photographed. Defendant's theory is that its liability under the Carmack Amendment ended at the moment Texas Instruments refused to accept delivery. There is some authority that would support this contention. *See, e. g.,* Hicks v. Wabash R.R., 131 Iowa 295, 108 N.W. 534 (1906). Other courts have concluded, however, that the initial carrier's liability continues until the consignor has been notified that the consignee has refused to accept delivery. Nashville, C. & St. L. Ry. v. Dreyfuss-Weil Co., 150 Ky. 333, 150 S.W. 321 (1912); Stoddard Lumber Co. v. Oregon-Washington R.R. and Navigation Co., 84 Or. 399, 165 P. 363, 365 (1917); Coovert v. Spokane, P. & S. Ry. Co., 80 Wash. 87, 141 P. 324 (1914). The court in *Dreyfuss-Weil* based its decision on the broad definition of "transportation" under the statute. "The term 'transportation' * * * shall include * * * all services in connection with the receipt, delivery, elevation, and transfer in transit, ventilation, refrigeration or icing, storage, and handling of property transported." 49 U.S.C. § 1(3) (a) (1964). Given this broad definition, it would appear to be within the purview of the act to hold the defendant liable for the few hours that passed between the rejection by Texas Instruments and the inspection at Love Field. Furthermore, the evidence strongly suggests that there was no additional damage to the machine during this period. The description of the damage given by the Texas Instruments employee who inspected the machine at the delivery dock accords substantially with the description given as a result of the subsequent inspections at Love Field and in Worcester.

■ Defendant also contends that plaintiff has failed to offer sufficient evidence for the district court to conclude that the damaged machine had no fair market value. The only witness to testify regarding the value of the machine was Leland-Gifford's vice-president, Wilkinson. He holds a bachelor's degree in electrical engineering and a master's in mechanical engineering and is a registered professional engineer in the State of Massachusetts. He consulted with and supervised the original design and construction of the machine, and the district judge found him qualified as an expert. Wilkinson testified that there is no market in broken or used electronic machinery of the type purchased by Texas Instruments.

Defendant relies heavily on the fact that Wilkinson only disassembled half of the machine during his inspection. It also insists that plaintiff had the burden of showing that none of the major parts of the machine could be reused as components of other machines. But this court cannot rule as a matter of law that every nut and bolt in a machine must be removed before its value can be determined. Wilkinson had sufficient qualifications and experience for the district court to rely on his testimony, which was sufficient to establish a prima facie case and shift the burden to the defendant to rebut it.

Affirmed.