CAMAR CORPORATION, Plaintiff,

v.

PRESTON TRUCKING CO.,
INC., Defendant.

No. CIV. A. 96–40092–NMG.

United States District Court,
D. Massachusetts.

Aug. 20, 1998.

Steven R. Maher, Worcester, MA, for Plaintiff.

Wesley S. Chused, Looney & Grossman, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

GORTON, District Judge.

In September, 1995, the plaintiff, Camar Corporation ("Camar"), learned that its written bid of $215 for 156 pieces of used marine equipment, including turbines, propellers, indicators and other component parts to the United States Navy's Defense Reutilization and Marketing Service ("DRMS") had been accepted. Camar then arranged, by telephone, to have the defendant, Preston Trucking, Inc. ("Preston"), take possession of and transport the equipment from the Naval Supply Center in Oakland, California to Worcester, Massachusetts.

In October, 1995, Preston informed Camar that it had lost the equipment in transit, and, after Preston refused to pay Camar $137,500 for its loss, as Camar had demanded, Camar filed this action in April, 1996, seeking damages of $353,370 under the Carmack Amend-

ment to the Interstate Commerce Act, 49 U.S.C. § 14706 (formerly 49 U.S.C. § 11707).[1] Pending before this Court are the cross-motions of Camar and Preston for summary judgment under Fed.R.Civ.P. 56(c) and Preston's motion to strike exhibits and affidavits.

## I. *The Background Facts*

Camar, headquartered in Worcester, Massachusetts, buys surplus naval equipment from the United States government and refurbishes and resells that equipment, usually to foreign governments. In the past, Camar has bought and resold DRMS surplus goods to the Brazilian Navy at enormous profit.

During a period of approximately two years prior to September, 1995, Preston, a common carrier, transported 80 shipments of freight for Camar. Camar prepared and delivered to Preston bills of lading for those shipments.

In September, 1995, Camar bid $215 for a 600 pound lot of marine equipment which it hoped to resell for $300,000 or more. Knowing only that, according to the DRMS invitation to bid, the equipment ranged in age from 9 to 16 years old and originally cost the Navy $275,000, Camar never inspected that equipment or reviewed maintenance records for it.

After learning that it was the successful bidder, Camar telephoned Preston to arrange transportation and sent to it by facsimile a copy of Camar's DRMS Notice of Award indicating the $215 bid price. Neither Camar nor Preston prepared a bill of lading in connection with the shipment, and Camar did not inform Preston of its value.

In mid-October, 1995, WestEx, Inc., the originating carrier, took possession of Camar's equipment and transferred it to Preston. Preston then lost the entire shipment.

On October 27, 1995, Camar submitted a claim for loss to Preston in the amount of $137,500 (one-half of the original cost of the equipment to the U.S. Navy). On November 10, 1995, Preston responded that its liability

---

**1.** In Camar's original complaint, it alleged damages of $137,500, but it later amended its complaint to allege dramatically increased damages.

was limited to ten cents per pound or a total of $60 in accordance with its tariff, ICC PRES 1000–L, published with the former Interstate Commerce Commission. The filing of this action followed in due course.

## II. *The Motion for Summary Judgment*

### A. *The Legal Standard*

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery on file and affidavits "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmovant, however, may not rest upon mere allegation or denial of the pleadings. Fed.R.Civ.P. 56(e). The Court must view the record in the light most hospitable to the non-moving party and indulge all reasonable inferences in his favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993).

### B. *Discussion*

In support of its motion for summary judgment, Camar argues that

1) it is entitled to summary judgment with respect to Preston's liability because Preston admits that it was responsible for losing Camar's equipment;

2) under the Carmack Amendment, damages should be awarded for Camar's "actual loss or injury" because Preston failed effectively to limit its liability;

3) its actual loss equals the market value of the lost equipment which is not properly measured by the auction price of $215 but rather by its prior sales of similar items to Camar's customers; and

4) evidence of prior sales of equipment similar to that listed in the DRMS Invitation For Bid establishes that the lost equipment had a market value of $353,-370.05.

In opposition to Camar's motion and in support of its cross-motion, Preston argues that

1) Camar cannot establish a *prima facie* case under the Carmack Amendment because it cannot prove "good origin condition" of the equipment;

2) even if Camar can make a *prima facie* case, its damages are limited to the release rate of ten cents per pound ($60) based upon Preston's published tariff; and

3) even if Camar is entitled to recover for its actual loss, that loss should be valued at the purchase price for the equipment, namely $215, because any other evaluation of the loss is speculative.

### 1. *The Prima Facie Case Under the Carmack Amendment*

In order to establish a prima facie case under the Carmack Amendment, the plaintiff must show 1) delivery to the carrier in good condition, 2) arrival in damaged condition and 3) the amount of damages caused by the loss. *Missouri Pacific R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137–38, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964); *D.P. Apparel Corp. v. Roadway Express, Inc.*, 736 F.2d 1, 2 (1st Cir.1984); *Texas Instruments, Inc. v. Branch Motor Express, Co.*, 432 F.2d 564, 565 (1st Cir.1970).

In support of its cross-motion for summary judgment, Preston argues that Camar cannot prove good origin condition and, therefore, cannot recover under the Carmack Amendment. In response, Camar contends that, although it never inspected the goods, the invitation to bid which describes the equipment as "used—good condition" proves good origin condition because the DRMS is required by 41 C.F.R. 101–45.303–1 to be as accurate as possible in describing the surplus goods it auctions.

The purpose of demonstrating delivery to the carrier in good condition and arrival in damaged condition is to establish

that a change in the condition of the goods occurred while goods were in the carrier's custody. *See Missouri Pacific R.R. Co.*, 377 U.S. at 138, 84 S.Ct. 1142 (stating that to rebut the prima facie case, a carrier must attribute the loss to a different *cause* and thereby implying that the purpose of the prima facie elements is to establish causation by the carrier). Because the terms "good" and "damaged" are relative, Preston's suggestion that Camar must show "good condition" in absolute terms is unfounded.

In the present case, the parties do not dispute that a change in the condition of the equipment occurred while Preston had custody of it: the equipment existed at the point of origin, was delivered by WestEx to Preston and then vanished in transit. In other words, the condition of the equipment was relatively good at the point of origin and relatively bad (nonexistent) at the point of arrival.

■ Because the undisputed facts demonstrate "good" origin condition and arrival in damaged condition, and the parties do not dispute Camar's ability to prove at least some damages caused by the loss, Camar is entitled to summary judgment with respect to Preston's liability under the Carmack Amendment for the lost equipment.

### 2. *Preston's Tariff*

■ The Carmack Amendment imposes liability on the carrier for "actual loss or injury to the property" unless the carrier limited its liability pursuant to 49 U.S.C. § 10730. *See* 49 U.S.C. § 14706(c)(1)(A). To limit its liability, the carrier must 1) maintain an approved tariff, 2) issue a bill of lading prior to shipment, 3) give the shipper an opportunity to choose between levels of liability, and 4) demonstrate an "absolute, deliberate and well-informed choice by the shipper," in the form of a written agreement subscribing to the released value of goods.[2] *Anton v. Greyhound Van Lines, Inc.*, 591 F.2d 103, 107 (1st Cir.1978); *see also Toledo Ticket Co. v. Roadway Express, Inc.*, 133 F.3d 439, 442 (6th Cir.1998) (describing § 10730 as a "very

narrow exception" to the general rule of the Carmack Amendment, which imposes liability for the actual value of the shipper's loss); *Carmana Designs Ltd. v. North Am. Van Lines, Inc.*, 943 F.2d 316, 319 (3d Cir.1991) (same).

Preston argues that it limited its liability to ten cents per pound of goods lost by maintaining a tariff approved by the Interstate Commerce Commission ("ICC"). Maintaining an approved tariff alone, however, is not enough for a carrier effectively to limit its liability. *Anton v. Greyhound Van Lines, Inc.*, 591 F.2d 103 (1st Cir.1978).

With respect to the particular transaction at issue in this case, Preston failed to issue a bill of lading or to communicate with Camar about its tariff, released rates and liability limitations. Preston, nevertheless, argues that based upon the parties' prior course of dealing and because Camar is a sophisticated shipper and had executed bills of lading with respect to prior shipments, Camar had constructive knowledge of the published tariff so that, in effect, it made a choice to pay a low rate in exchange for Preston's limited liability.

■ In spite of Preston's attempt to show that Camar made a knowing choice, there is no evidence in the record of a written agreement evincing an "absolute, deliberate and well-informed choice by the shipper," with respect to the specific transaction at issue in this case. No reasonable jury, therefore, could find that Preston effectively limited its liability for Camar's equipment under 49 U.S.C. § 14706, and Camar is, thus, entitled to be compensated for its full, actual loss.

### 3. *Compensation for Actual Loss Under the Carmack Amendment*

■ The proper measure of "actual loss" under the Carmack Amendment is the difference between the market value of the property if it had been delivered according to the contract, and the market value of the nonconforming goods. *Fredette v. Allied Van Lines*, 66 F.3d 369, 372 (1st Cir.1995); *East-*

**2.** "Released value" is a term used in prior versions of the Carmack Amendment to refer to the value declared or agreed upon in writing by the shipper. *See* 49 U.S.C. § 20(11) (1915) (repealed in 1978 by Pub.L. 95–473).

man Kodak Co. v. Westway Motor Freight, Inc., 949 F.2d 317, 320 (10th Cir.1991); Polaroid Corp. v. Schuster's Express, Inc., 484 F.2d 349, 351 (1st Cir.1973); B & D Appraisals v. Gaudette Machinery Movers, Inc., 733 F.Supp. 505, 507 (D.R.I.1990).

■ The DRMS Notice of Award indicating Camar's purchase price of $215 is the only non-speculative evidence of the market value of the lost equipment. Although Camar submits a great deal of evidence that the kinds of equipment which were contained in the lost shipment have been sold for substantial profits in the past, the record contains no evidence of any value of the subject equipment other than the bid price for the particular pieces of equipment lost by Preston. For example, there is no evidence that, by virtue of its transportation from the Naval Supply Center in California to Camar's headquarters in Massachusetts, or its prospective resale to a known buyer, the equipment's value increased to more than the purchase price. Furthermore, the fact that the United States government purchased the equipment when new for $275,000 is not probative of that equipment's value after 9 to 16 years of use and depreciation.

As the Second Circuit Court of Appeals has noted:

> Buyers of such surplus property know perfectly well that there is always a chance of buying property that *may turn out to be of little value, or may develop into a great bargain with a huge windfall of profit.*

Dadourian Export Corp. v. United States, 291 F.2d 178, 182 (2d Cir.1961) (emphasis supplied). It would amount to pure speculation on the part of a jury to determine where along the continuum bounded by those two extremes lay the value of equipment in question. See Bigelow v. RKO Radio Pictures, 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652 (1946)("[E]ven where the defendant by his own wrong has prevented a more precise computation, the jury may not render a verdict based on speculation or guesswork.")

Viewing all the evidence in the light most favorable to Camar, this Court concludes that no reasonable jury could find that the market value of the lost equipment and, thus, Camar's full, actual loss equals any more or less than $215. This Court will, therefore, enter judgment for Camar in that amount.

### III. *Motion To Strike*

Preston moves to strike, on hearsay and relevance grounds, affidavits, documents and photographs which describe and show the kinds of equipment contained in the lot sold by DRMS to Camar and invoices listing the prices paid for such equipment by Camar's customers, e.g. the Brazilian Navy. As Camar argues, in responding to the motion, Preston's hearsay objection to the majority of the documents at issue is overcome by the business records exception. See Fed.R.Evid. 803. Furthermore, the documents and affidavits at issue are relevant to prove the possibility that equipment of the kind lost by Preston could be sold at significant profits. See Fed.R.Evid. 401.

■ Nevertheless, in the absence of any evidence tending to prove a market value higher than the bid price for the specific equipment lost or, for example, a commitment on the part of a particular buyer to purchase that equipment "as is", the documents at issue are insufficient to establish lost profits with any degree of certainty. Because any calculation of lost profits based upon the evidence in the record, including the affidavits and documents at issue in Preston's motion to strike, would be entirely speculative, that motion to strike will be denied as moot.

### ORDER

For the foregoing reasons:

1) plaintiff's motion for summary judgment (Docket No.25) is **ALLOWED, IN PART, AND DENIED, IN PART,** and judgment shall be entered for the plaintiff in the amount of $215;

2) defendant's cross-motion for summary judgment (Docket No. 32) is **DENIED;** and

3) defendant's motion to strike (Docket No. 34) is **DENIED AS MOOT.**

So ordered.